### In re STROUD FORD, INC., Debtor.

### In re Vincent VECCHIO and Helen Vecchio, Debtors.

**Bankruptcy Nos. 5–92–00713, 5–92–00712.**

United States Bankruptcy Court, M.D. Pennsylvania.

Sept. 24, 1993.

Brian Manning, Wilkes–Barre, PA, for Stroud Ford, Inc., Vincent & Helen Vecchio, debtors.

Joseph Murray, Stroudsburg, PA, for Unsecured Creditors' Committee, objector.

Steven Roth, Wilkes–Barre, PA, for Mellon Bank, objector.

Myles Wren, Scranton, PA, for Raymond Price, III, buyer.

Robert N. Opel, III, Paul Pugliese, Kingston, PA, for John Katsaros and Harold Bendell, objectors.

### OPINION AND ORDER

JOHN J. THOMAS, Bankruptcy Judge.

The Court has heard evidence on the Debtor's Motion to complete the sale of real estate and personalty to Raymond Price, III, ("Price") for the total sum of Nine Hundred Seventy Thousand Dollars ($970,000.00), which has been apportioned Six Hundred Seventy–Eight Thousand Dollars ($678,-000.00) for real estate and Two Hundred Ninety–Two Thousand Dollars ($292,000.00) for personalty.

The Motion was originally responded to by objections from the Creditors' Committee; the principal secured creditor, Mellon Bank ("Mellon"); and John Katsaros and Harold Bendell ("Katsaros/Bendell"), prospective bidders and purchasers of unsecured claims.

Mellon Bank has withdrawn its objections.

Prior to the initiation of the hearing, counsel for Price and Katsaros/Bendell announced that an agreement had been reached whereby Eighteen Thousand Dollars ($18,000.00) would be forwarded to Katsaros/Bendell's counsel in return for the Katsaros/Bendell objection being withdrawn. Testifying on behalf of the Debtor and/or Price, were James D. DeAngelo, Certified Public Accountant for the Debtor Corporation; James Fareri, Esquire, Special Counsel for the Debtor; Thomas R. Wilkins, Real Estate Appraiser; Michael Kozar, a Hydrogeologist; and Mr. Raymond Price, III, the prospective purchaser. After hearing testimony and reviewing the exhibits, the Court makes the following findings of fact.

The Debtor, even before its bankruptcy filing on April 21, 1992, was attempting to negotiate the sale of its Ford dealership with various entities. On several occasions, the Debtor was getting close to finalizing agreements. When the Debtor lost its ability to utilize a floor plan with its lending institution, it lost the ability to continue as an active dealership. This occurred on or about November of 1992. The Debtor corporation and its principal, Vincent Vecchio, are obligated on various debts including the debt to Mellon. Mellon has secured relief from the automatic stay and is in a position to execute on personalty and foreclose against real estate. Should they so desire, a sale of personalty could possibly take place as soon as sixty (60) days. A foreclosure sale of real estate would take longer.

Among the assets of the Debtor is a dealership franchise agreement with Ford Motor Company ("Ford") which is only transferable upon the consent of Ford. Ford is in a position to terminate this franchise should they secure relief from the automatic stay. A sale of this business would benefit the Debtor's principal, Vincent Vecchio, by satisfying an obligation upon which he is jointly liable with the Debtor to Mellon. Since the Debtor had terminated their operations in November of 1992, the principal, Vincent Vecchio, directly or through related entities, has paid various administrative expenses including insurance on the premises.

Should the sale not be approved, the purchaser may not be willing to wait for the confirmation of a Plan in order to complete his intended purchase. By the same token, should Mellon execute against the personal property, the purchaser, Price, may not be interested in purchasing the real estate. The property of Stroud Ford, Inc. to be sold

represents virtually all of the assets of Stroud Ford, Inc.

## DISCUSSION

11 U.S.C. Section 363(b)(1) identifies those circumstances under which a Trustee may sell property of the estate out of the ordinary course of business.

The only guidance that the Code gives this Bankruptcy Court relative to whether such a sale should be allowed is that it must take place only after "notice and a hearing".

This would appear to suggest that the only considerations that this Court must give to the approval or disapproval of a sale are those factors such as have been identified in *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3rd Cir.1986). That case stood for the proposition that when a Bankruptcy Court authorizes a sale of assets pursuant to Section 363(b)(1), it is required to make a finding with respect to the "good faith" of the purchaser.

Although this may be the only issue that is, indeed, before this Court, we are aware that case law has strongly suggested that sales of virtually all of the assets of a Chapter Eleven Debtor other than pursuant to a Reorganization Plan, should be approved only for a "sound business purpose". *In re Delaware & Hudson Railway Co.*, 124 B.R. 169 (D.Del.1991). The reasons for this rule were amply discussed in the seminal case of *In re Lionel Corp.*, 722 F.2d 1063 (2nd Cir. 1983).

*In re Lionel Corp.* concluded that a Bankruptcy Judge could consider various factors before he or she approves a sale such as "the proportionate value of the asset to the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed within the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-a-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, most importantly perhaps, whether the asset is increasing or decreasing in value." *Id.* at p. 1071.

The Court also emphasized that "Finally, we must consider whether appellants opposing the sale produced evidence before the bankruptcy court that such sale was not justified". *Id.*

The proposition raised by *In re Lionel Corp.* has been supported by both the Eastern District of Pennsylvania and the Western District of Pennsylvania. *In re Industrial Valley Refrigeration and Air Conditioning Supplies, Inc.*, 77 B.R. 15 (Bkrtcy.E.D.Pa. 1987). *In re Titusville Country Club*, 128 B.R. 396 (Bkrtcy.W.D.Pa.1991).

*In re Titusville Country Club* identifies four (4) requirements of the "sound business purpose" test i.e., (1) Sound business reason; (2) Accurate and reasonable notice; (3) Price is adequate (fair and reasonable); and (4) Good faith exists. *Id.* at p. 399. Not coincidently, factors (2), (3) and (4) appear to duplicate those specific requirements implicit in the Third Circuit's ruling in *In re Abbotts Dairies of Pennsylvania, Inc.* Thus, these factors must always be found in any Section 363(b)(1) sale regardless of whether it be by a Chapter Eleven Debtor or a Trustee in one of the other chapters.

Before we attack the issue as to whether "sound business purpose" must be demonstrated before we allow a sale outside of a confirmed Plan of Reorganization, it seems only reasonable that this Court determine whether the other required factors are present since the Debtor's efforts to sell property would necessarily fail should one of those elements not be present.

Initially, we note that none of the objectors have raised the issue of the adequacy or inadequacy of notice. Accordingly, this Court finds that there has been accurate and reasonable notice of the proceeding before the Court.

We now turn our attention to a determination as to whether the purchaser has acted in good faith as we are required to do by *In re Abbotts Dairies of Pennsylvania, Inc.*

As indicated in *In re Abbotts Dairies of Pennsylvania, Inc.*,

Unfortunately, neither the Bankruptcy Code nor the Bankruptcy Rules attempts

to define "good faith." Courts applying section 363(m) (and its predecessor, Fed. R.Bankr.P. 805) have, therefore, turned to traditional equitable principles, holding that the phrase encompasses one who purchases in "good faith" and for "value." (Citations omitted.)

"The requirement that a purchaser act in good faith ... speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." (Citations omitted.) *In re Abbotts Dairies of Pennsylvania, Inc., supra.* at p. 147.

This Court finds that the negotiating process between Price and the Debtor was long and difficult and occurred at arm's length. Nevertheless, our concern as to the good faith of this purchaser revolves specifically on the circumstances by which Katsaros/Bendell withdrew their objection to the sale. Paragraph three of their objection filed March 22, 1993, specifically states as follows:

2. The proposed sale of real estate and personal property to Raymond Price, III does not represent the highest and best offer to the Debtors for such property.
3. Attached hereto as Exhibit "A" and made a part hereof is a copy of a written offer made by the Objectors for the purchase of the same real and personal property proposed to be sold to Raymond Price, III for the total sum of $970,000.00. The Objectors' offer is in the amount of $1,020,000.00.

In order to secure standing, Katsaros/Bendell secured assignments of claims from four (4) unsecured creditors and made those assignments of record as of April 23, 1993.

This Court understands that the four (4) claims assigned to Katsaros/Bendell totalled Two Hundred Thirty–Four and 65/100 Dollars ($234.65) (see Docket entries nos. 76, 77, 78 and 79). The explanation given to the Court as to the circumstances surrounding the withdrawal of the objections were as follows. Prior to the hearing, a telephone call was received by Price from either Mr. Katsaros or Mr. Bendell. Shortly thereafter, a meeting took place at which time it was agreed that for the sum of Eighteen Thousand Dollars ($18,000.00), Messrs. Katsaros and Bendell would withdraw their objection. Ostensibly, Katsaros'/Bendell's efforts to pursue the Stroud Ford, Inc. premises and dealership had become too time consuming and they wanted "out".

11 U.S.C. Section 363(n) is illuminating. That Section indicates that "The trustee may avoid a sale under this section if the sale price was controlled by an agreement among potential bidders at such sale, ...".

Even though this hearing was not scheduled as an "auction", this Court has no difficulty in identifying both Mr. Price and Messrs. Katsaros and Bendell as "potential bidders". Both had a significant interest in purchasing the property in question. The Katsaros/Bendell objection was clearly aimed at defeating the Price sale so as to either negotiate a private sale or establish a public sale. The agreement by Katsaros/Bendell to withdraw their objection for the sum of Eighteen Thousand Dollars ($18,000.00) may very well have been seen by the parties to be a legitimate business transaction ending what might have proven to be an expensive controversy. Ostensibly, the Eighteen Thousand Dollar ($18,000.00) figure represented Katsaros'/Bendell's expenses to date in advancing their position. As was stated in *In re Abbotts Dairies of Pennsylvania, Inc.*, "Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, *collusion between the purchaser and other bidders* or the Trustee, or an attempt to take grossly unfair advantage of other bidders." (Emphasis ours.) *In re Abbotts Dairies of Pennsylvania, supra.* at p. 147. As innocent and business-like as this "understanding" was to the parties involved, this Court finds that it smacks of inappropriateness and could have only stifled the bankruptcy mechanism designed to ensure that the estate is fairly compensated for its assets. We therefore hold that the purchaser has not acted in good faith. The requirement by the Third Circuit that we make a finding as to good faith has been identified as necessary specifically since "... such a procedure ensures that section 363(b)(1) will not

734

be employed to circumvent the creditor protections of Chapter 11, and, as such, it mirrors the requirement of section 1129 that the bankruptcy court independently scrutinize the debtor's reorganization plan and make a finding that it 'has been proposed in good faith and not by any means forbidden by law' ". *Id.* at p. 150.

Having found a lack of good faith by the purchaser, this Court deems it unnecessary to determine whether the consideration offered was fair and valuable or whether sound business reasons exist for a sale outside of a Chapter Eleven Plan.

For these reasons, we issue the attached **ORDER.**

### ORDER

After hearing on the issue and for the reasons set forth in the attached **OPINION,** the Motion of the Debtor-in-Possession to sell real and personal property of the estate to Raymond Price, III, is hereby **DENIED.**