In re TIDEWATER GROUP, INC., Debtor.

PROVIDERS BENEFIT LIFE INSURANCE COMPANY, Plaintiff and Third-Party Plaintiff,

v.

TIDEWATER GROUP, INC., Debtor in Possession, Defendant,

and

American Centennial Life Insurance Company, Third-Party Defendant.

Bankruptcy No. 79–02972A.
Adv. No. 79–0028A.

United States Bankruptcy Court,
N. D. Georgia,
Atlanta Division.

Feb. 10, 1981.

Edgar A. Neely, Jr., Neely, Player, Hamilton, Hines & Welch, Atlanta, Ga., for plaintiff.

Frank W. Scroggins, Hicks & Scroggins, Atlanta, Ga., for defendant Tidewater Group, Inc.

John L. Taylor, Jr., Alan L. Dye, McDaniel, Chorey & Taylor, Atlanta, Ga., for American Centennial Life Ins. Co., third-party defendant.

## ORDER

W. H. DRAKE, Jr., Bankruptcy Judge.

This proceeding comes before the Court on a motion by the plaintiff, Providers Benefit Life Insurance Company (hereinafter "Providers"), seeking an order enforcing a settlement agreement between counsel for the debtor in possession (hereinafter sometimes "Tidewater") and Providers and, further compelling the parties to execute a certain "Mutual Covenant Not to Sue or Rebring" and the attorney for the debtor to file an "Application for Authority to Compromise and Order Setting Hearing." In this motion, Providers contends that Providers and counsel for the debtor "have reached a full and complete compromise of all claims, including an agreement as to the language in the Mutual Covenant Not to Sue or Rebring, Application for Authority to Compromise and Order Setting Hearing." Motion, filed October 7, 1980, p. 2. Providers also alleges that Tidewater will

not abide by the settlement and refuses to file the application for authority and also refuses to execute the Mutual Covenant.

## FINDINGS OF FACT

1.

On or about October 30, 1979, Providers and Tidewater entered into an agreement for the purchase by Providers of 100% of the issued and outstanding capital stock of American Centennial Life Insurance Company (hereinafter "American Centennial"). This sale was confirmed by Order of the United States Bankruptcy Court dated November 1, 1979.

2.

Pursuant to the sale contract, Providers deposited $75,000 into the escrow account of Cotton, Katz, White & Palmer.

3.

On or about November 21, 1979, Providers filed a complaint against Tidewater seeking *inter alia* the return of the funds held in escrow. Tidewater denied the allegations in Providers' complaint and counterclaimed for damages arising from the failure of Providers to complete the confirmed sale.

4.

At some point prior to August 27, 1980, an oral agreement was reached between the attorneys for Providers and the attorneys for Tidewater. That agreement proposed to settle the aforementioned litigation on terms reduced to writing. The documents embodying the terms of the settlement have never been executed.

5.

On November 24, 1980, the Circuit Court for the City of Baltimore, Maryland entered an Order authorizing the receiver of American Centennial Life Insurance, the State Insurance Commissioner of Maryland (hereinafter "Commissioner"), to enter into an indemnification agreement with Tidewater. That agreement obligates the Commissioner to indemnify Tidewater for losses up to $40,000 plus accrued interest on the $75,000 now held in escrow, in order that Tidewater may pursue the litigation against Providers rather than settle.

6.

Because of this indemnity agreement, Tidewater now takes the position that the settlement is not in the best interests of the creditors and has refused to execute the documents embodying the settlement of the litigation with Providers and further, has refused to file an application to confirm the compromise pursuant to Rule 919(a), Rules of Bankruptcy Procedure.

## CONCLUSIONS OF LAW

The Court's jurisdiction over this matter is based upon 28 U.S.C. § 1471(b). The first issue before the Court is whether an enforceable agreement to compromise the instant litigation was actually reached by the attorneys for Tidewater and Providers. The parties assume, and the Court agrees, that the construction of the alleged agreement is controlled by Georgia law. *Glazer v. J. C. Bradford & Co.*, 616 F.2d 167 (5th Cir. 1980) and cases cited therein.

Georgia Code §§ 9–605 and 24–3339 allow attorneys for parties involved in litigation to reach enforceable agreements terminating the litigation. Such settlement agreements reached by and between counsel for the litigants are binding on the clients even if the agreement is oral. *Greene v. Colonial Stores, Inc.*, 144 Ga.App. 645, 242 S.E.2d 489 (1978). However, such an agreement is binding only where it is "clear that [the agreement] is full and complete, covers all issues, and is understood by all litigants concerned." *Cross v. Cook*, 147 Ga.App. 695, 250 S.E.2d 28 (1978).

Tidewater and the Commissioner contend that there were unresolved contingencies, the resolution of which was a condition of the settlement. They further contend that because of these unresolved contingencies that every term of the settlement had not been agreed upon and that, therefore, the settlement agreement is not enforceable under Georgia law. See *Cross v. Cook, supra.*

However, the Court rejects this argument because Providers has resolved the alleged contingencies by waiver. The Court finds that the attorneys for the parties reached an agreement sufficiently complete to be enforced under Georgia law.

█ The second issue concerns the competence of an attorney for a debtor in possession to enter a binding compromise prior to Court approval of the compromise. See Rule 919(a), Rules of Bankruptcy Procedure.

The rule of Georgia law upon which Providers' argument is based is that "an act of an agent within the scope of his apparent authority binds the principal." *Glazer, supra,* at 168 (citations omitted). That same case described the scope of an agent's apparent authority as follows:

"In the absence of *express restrictions upon the attorney's authority*, it may be termed plenary insofar as the court and the opposing parties are concerned." *Id.* [emphasis added].

Rule 919(a), Rules of Bankruptcy Procedure,[1] creates an express restriction which severely limits the scope of the apparent authority of an attorney for a debtor in possession.[2]

Providers advocates the position that the requirement that the Court determine whether or not to approve any compromise is merely a perfunctory, ministerial act and not a true restriction on the authority of the debtor in possession. However, this duty of the Court is far from ministerial. As the Fifth Circuit stated in a case under the provision which was the predecessor of Rule 919:[3]

"[The debtor in possession's] ... powers depend on law. He may not compromise or arbitrate anything except under the court's approval.... By no surrender of possession can he defeat the court's control over any part of the estate." *Lincoln Nat. Life Ins. Co. v. Scales,* 62 F.2d 582, 585 (5th Cir. 1933) [citations omitted].

In that case the Court refused to approve an assignment which the trustee had made. The assignment was void despite the fact that under the state law

"[t]he legal effect of such an assignment is ordinarily to end the assignor's interest in and control over the policy and to substitute the assignee." *Id.* at 583 [citations omitted].

Therefore, it is clear to the Court that the attorney for the debtor is not competent to enter into an agreement which binds the estate *without Court approval.*

On the other hand, neither is it true that the agreement of a trustee or debtor in possession is a total nullity prior to Court approval. While research has revealed no compromise cases which are directly on point, there is a large body of case law concerning the effect of a trustee's acceptance of a bid at a sale prior to confirmation of that sale. As one commentator has stated:

"Since a private (as well as a public) sale is subject to the court's approval, the mere agreement of trustee and purchaser, as embodied in the sales contract, does

---

1. Rule 919(a) concerns the authority of a trustee rather than the authority of the attorney for the debtor in possession. However it is made applicable to reorganization cases by Rules 10-901, 11-63 and 12-62, Rules of Bankruptcy Procedure. In a Chapter XI case the word "trustee ... means ... debtor continued in possession." Rule 11-2, Rules of Bankruptcy Procedure. These Rules remain in effect to the extent not inconsistent with the Code. Bankruptcy Reform Act of 1978, title IV, § 405(d), P.L. 95-598.

2. Actually, Rule 919(a) creates a restriction on the authority of the principal rather than that of the agent. This legal restriction on the authority of the principal operates to limit the scope of the apparent authority of the agent upon which Providers might have reasonably relied. See e. g. *Peoples Bank of LaGrange v. Georgia Bank & Trust Company,* 126 Ga.App. 768, 191 S.E.2d 876 (1972). See also *Garber v. American Mutual Fire Insurance Company,* 131 Ga.App. 366, 368, 206 S.E.2d 86 (1974). "The same law that binds the principal, likewise binds his agent."

3. "The receiver or trustee may, with the approval of the court, compromise any controversy arising in the administration of the estate upon such terms as he may deem for the best interest of the estate." § 27 of the Bankruptcy Act, 11 U.S.C. Chap. 4, § 50.

not generally complete a private sale. It binds the purchaser. *It probably also binds to some extent the trustee,* but whether the latter is bound in the same sense that he may not himself petition the court for a refusal of confirmation, unconditionally or unless certain additional conditions are met, is more doubtful and probably depends upon the circumstances." 4B *Collier on Bankruptcy* ¶ 70.98, p. 1174 (14th ed. 1978). [emphasis added] [footnotes omitted].

The Court feels that an agreement by a debtor in possession to compromise litigation should also be binding upon all parties to the agreement pending a Court determination as to whether or not to approve the agreement. See e. g. *Frazier v. Ash,* 234 F.2d 320 (5th Cir. 1956). Therefore, Tidewater is competent to enter an agreement which is binding *pending Court approval or disapproval.*

Having held that a settlement agreement was reached and that Tidewater is competent to enter an agreement which is binding, the Court must enforce the agreement. Of course, the issue of whether the agreement should be approved as being in the best interest of the creditors remains to be decided at the time when a hearing is held on the application for approval of the agreement. *In re Haas Davis Packing Co.,* 2 BCD 167 (B.C.S.D.Ala.1975).

It may happen that Tidewater will oppose its own application at that hearing. See e. g. *In re New Strand Theatre, Inc.,* 109 F.Supp. 350 (S.D.N.Y.1952), *aff'd* 201 F.2d 889 (2nd Cir. 1953), *cert. den. sub nom Ratett v. Kaplan,* 345 U.S. 995, 73 S.Ct. 1137, 97 L.Ed. 1402 (1953). If that occurs, "the opinion of counsel for the debtor, considerably experienced in the bankruptcy field, is entitled to some weight in evaluation of the proposed compromise." *In re Flah's, Inc.,* 17 CBC 774, 777 (B.C.N.D.N.Y.1978). Nonetheless, it remains for the Court, not the debtor in possession, to determine whether or not a compromise of litigation should be approved under Rule 919(a).

IT IS HEREBY ORDERED AND ADJUDGED that the motion of Providers shall be and is granted.

IT IS FURTHER ORDERED AND ADJUDGED that Tidewater shall execute the documents embodying the proposed settlement and shall file an application seeking approval of said settlement by February 27, 1981.

IT IS FURTHER ORDERED AND ADJUDGED that the parties shall pay their own costs.

IT IS SO ORDERED.