**In re STROUD FORD, INC., Debtor.**

**In re Vincent VECCHIO and Helen Vecchio, Debtors.**

**Raymond PRICE, III, Plaintiff,**

v.

**STROUD FORD, INC., Vincent Vecchio, and Helen Vecchio, Defendants.**

Bankruptcy Nos. 5–92–00713, 5–92–00712. Adv. Nos. 5–94–00247A, 5–94–00248A.

United States Bankruptcy Court, M.D. Pennsylvania.

Oct. 26, 1995.

Brian Manning, Wilkes–Barre, PA, for Debtors/Defendants.

Eugene Kelley, Wilkes–Barre, PA, for Plaintiff.

## OPINION AND ORDER

JOHN J. THOMAS, Bankruptcy Judge.

The complaint of Raymond Price, III, ("Price") requests the return from the chapter eleven estate of certain sums held pursuant to an agreement of sale between the estate and Price.

There appears to be no dispute as to the factual basis for this complaint. On February 19, 1993, the Debtors entered into two (2) separate agreements with Price for the sale of real and personal assets of the estate, which operated an automobile dealership. The agreements were identified as an "Asset Purchase Agreement" and a "Real Estate Agreement of Sale".

The purchase price for these assets was Nine Hundred Seventy Thousand Dollars ($970,000.00) with a Ten Thousand Dollar ($10,000.00) deposit made toward the Asset Purchase Agreement and a Forty Thousand Dollar ($40,000.00) deposit placed toward the Real Estate Agreement. One of the specified "conditions for settlement" was "[s]eller's [sic] receiving Bankruptcy Court approval of the terms of this Real Estate Agreement of Sale and the companion Asset Purchase Agreement, and the Court's Order permitting sale of the Premises and the Purchased Assets to Buyer free and clear of all liens and encumbrances."

That sale was never approved by this court for reasons more specifically enumerated in the case of In re Stroud Ford, Inc., 163 B.R. 730 (Bkrtcy.M.D.Pa.1993).

In summary, immediately prior to the sale hearing, Price negotiated the withdrawal of a competitive bidder by paying that competitive bidder Eighteen Thousand Dollars ($18,000.00). This fact was made known to the court prior to the hearing and only the creditors' committee objected. The court simply would not approve the sale under those circumstances.

This was not the conclusion of Price's relationship to the estate however. Notwithstanding the court's rejection of the sale in March of 1994, the parties continued to negotiate a new arm's length sale and pursuant those negotiations, Twenty Thousand Dollars ($20,000.00) of additional deposit was transferred to the Debtors-in-Possession.

Finally, in August of 1994, a subsequent agreement of sale was entered into between Price and the Debtors which concluded with the property being purchased by Price for the sum of Nine Hundred Thousand Dollars ($900,000.00).

■ Price now seeks the return of his deposits of Seventy Thousand Dollars ($70,000.00) from the failed agreements. The Debtors resisted his attempts saying that the sales failed because of Price's "bad faith" thereby justifying the Debtors in retaining the deposits as damages.

■ We will initiate our discussion with an analysis of the two agreements. The parties identified the agreements as a "Pennsylvania contract" presumably to be interpreted under Pennsylvania law. The parties choice of law will therefore control our interpretation of the contract. In re Columbia Gas Systems, Inc., 50 F.3d 233 (3rd Cir.1995) at footnote 10.

The agreements in question were "conditioned" on court approval, which was not forthcoming.

A condition is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due. Restatement of Contracts 2nd, § 224.

As heretofore indicated, court approval was never obtained and, therefore, perfor-

mance by Price (purchase of the property) could not be compelled.

■ In earlier times [1], this requisite for court approval would have been identified as a "condition precedent", the non-occurrence of which would excuse performance by the individual sought to be bound, in this case Price. *Acme Markets, Inc. v. Federal Armored Express, Inc.*, 437 Pa.Super. 41, 46, 648 A.2d 1218, 1220 (1994). Normally, the non-occurrence of a condition would discharge the duty of Price to purchase the property, unless Price has given reason that the performance of that condition shall be "excused". *Restatement of Contracts 2nd, § 225(2).*

The non-occurrence of a condition of a duty is said to be "excused" when a condition need no longer occur in order for performance of the duty to become due. The non-occurrence of a condition may be excused on a variety of grounds.... It may be excused by prevention or hindrance of its occurrence through a breach of the duty of good faith and fair dealing (§ 205).

.    .    .    .    .

**Illustrations:**

3. A contracts with B to build a house for $50,000, payable on condition that A present a certificate from C, B's architect, showing that the work has been properly completed. A properly completes the work, but C refuses to give the certificate because of collusion with B, and the non-occurrence of the condition is therefore excused. See § 239. Since the presentation of the architect's certificate is not part of the performance to be exchanged under the exchange of promises, A has a claim against B for $50,000. *Restatement of Contracts 2nd, § 225 Comment.*

■ Our analysis of Price's liability, therefore, depends on whether Price's conduct, which resulted in the court declining to approve the sale, constituted a "breach" of the duty of good faith and fair dealing under Section 205 of the Restatement of Contract Second.[2] "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Restatement of Contracts 2nd, § 205.*

On the advice of counsel, Price paid a competing bidder to withdraw their objection to the sale of the property to Price under the initial agreement of sale. This was made known to the court by counsel for Price prior to the court hearing in question. It was Price's position that the on-record announcement of such a settlement "cleansed" the transaction of any inappropriate implications.

Subterfuges and evasions violate the obligation of good faith in performance even though the actor believes his conduct to be justified. But the obligation goes further: bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. *Restatement of Contracts 2nd, § 205 Comment d.*

From whatever perspective the court views the transaction, the conclusion remains the same. When one potential bidder pays money to another potential bidder to "go away", then the result, by necessity, diminishes the offer to the seller. Unethical conduct is not rendered moral because it occurs in a public forum rather than a cloistered side room. Because that objector wore the hat of a potential bidder, the transaction should never have occurred. We had little hesitation in earlier concluding that the good faith of the transaction was destroyed under federal bankruptcy law. We are just as satisfied that state law standards of "good faith and fair dealing" have been breached. We find such facts sufficient to conclude that Price should not be excused from performance under the contract. Since specific performance was not possible, he must be liable for damages under the terms of the contract. The Asset Purchase Agreement provided in paragraph 5(1) as follows: "The sum of TEN THOUSAND AND NO/100 ($10,000.00) DOLLARS upon execution of

1. The Reporter's Note to Restatement of Contracts 2nd following § 224 discusses the former terms "condition precedent" and "condition subsequent" now singly referred to as "conditions".

2. Section 205 of the Restatement of Contracts Second has been applicable under Pennsylvania law. *Starr v. O–I Brockway Glass, Inc.*, 432 Pa.Super 255, 637 A.2d 1371 (1994).

this Agreement, to be held in escrow in a joint account by Buyer's counsel and Seller's counsel ("Escrowees") until closing, or to be returned to Buyer in the event the contingencies of this Agreement are not satisfied *without fault of Buyer;* " [Emphasis ours].

The Real Estate Agreement of Sale provided in paragraph 13 as follows: *"Remedies in the Event of Buyer's Default.* In the event of a material default by Buyer under the terms and conditions of this Agreement, Seller shall have the right to terminate this Agreement and to retain down monies paid [$40,000.00] by Buyer as liquidated damages."

While we are aware that Pennsylvania law abhors forfeitures (*Acme Markets, Inc. v. Federal Armored Express, Inc., supra.*), we view these sums as specifically provided for under the agreement, not disproportionate to the rather significant amount of the transaction as well as the risks present should the Seller be unable to effect a resale. We view the deposits as a reasonable measure of the damages caused by the specific conduct of the Buyer.

We do note that the deposits for the contracts of February 19, 1993 totalled Fifty Thousand Dollars ($50,000.00) and not the entire Seventy Thousand Dollars ($70,000.00) currently on deposit. The additional Twenty Thousand Dollars ($20,000.00) was apparently deposited with the Debtors-in-Possession pursuant to a second round of negotiations that did not result in the ultimate sale. While we deem that Fifty Thousand Dollars ($50,000.00) deposit as an appropriate forfeiture under the terms of the contract for Price's malfeasance not at all disproportionate to his culpability in having the transaction fail, we see no grounds that would allow the Debtors-in-Possession to retain the additional Twenty Thousand Dollar ($20,000.00) deposit that was made during unrelated negotiations. See *Restatement of Contacts 2nd, § 229.*

It is for the reasons enunciated herein that we issue the attached Order.

## ORDER

The relief requested by the Plaintiff is granted in part and denied in part. The Debtors-in-Possession are directed to return Twenty Thousand Dollars ($20,000.00) of the deposit monies to Price. To the extent that Price requests an additional turnover of the balance of the deposit, i.e., Fifty Thousand Dollars ($50,000.00), that relief is denied.