In re STROUD FORD, INC., Debtor.

In re Vincent VECCHIO and Helen Vecchio, Debtors.

William E. RINEHART, Plaintiff,

v.

STROUD FORD, INC., Vincent Vecchio, Helen Vecchio and Raymond Price, III, Defendants.

Bankruptcy Nos. 5–92–00713, 5–92–00712. Adversary Nos. 5–94–00147A, 5–94–00148A.

United States Bankruptcy Court, M.D. Pennsylvania.

Oct. 28, 1996.

Brian Manning, Wilkes–Barre, PA, for Debtors.

Jeffrey Kurtzman, Philadelphia, PA, for Plaintiff.

Peter Hoegen, Wilkes–Barre, PA, for Price.

Joseph Murray, Wilkes–Barre, PA, for Creditors' Committee.

### ORDER AND OPINION

JOHN J. THOMAS, Bankruptcy Judge.

The Debtors-in-Possession entered into an agreement of sale with William E. Rinehart, which agreement provided that the major asset of the estates, i.e., a Ford dealership including the real estate, would be sold to Rinehart for the sum of Seven Hundred Twenty–Five Thousand Dollars ($725,000.00). The parties specifically agreed that the sale would not be subject to "higher bids".

Notice was circulated and the only objection received was from Ray Price, a potential higher bidder who indicated, in his objection, his willingness to outbid Rinehart.

Prior to the date and time of hearing, Price moved the court for the opportunity to register a higher bid of Eight Hundred Twenty–Five Thousand Dollars ($825,000.00) at the hearing. The court denied that mo-

tion on July 24, 1994. Subsequently on July 27, 1994, at the hearing on the Rinehart agreement, counsel for the Debtors-in-Possession, Attorney Brian Manning, observed that because a higher bid was available, now Nine Hundred Thousand Dollars ($900,-000.00), it was likely that the court would deny the motion to sell property to Rinehart. The court observed that denial was not automatic just because a higher offer may be available, but that the Debtors-in-Possession should either advance the motion to sell or withdraw it.

After consultation with his clients, counsel for Debtors-in-Possession opted to withdraw the motion, which the court approved over Rinehart's objection. It was thereafter that Rinehart filed this instant litigation seeking, among other things, an administrative claim against the estate for breach of its contract. Subsequently, the Debtors-in-Possession entered into an agreement with Price to sell the dealership which sale eventually met with court approval.

■ Much has been written about the binding affect of agreements entered into by the trustee or debtor-in-possession and others.

Are these agreements enforceable before court approval?

What is the effect of court approval on the binding nature of the agreements?

Can the agreement be breached before approval?

The courts have addressed these issues in a piecemeal variety of cases, all of which have resulted in a somewhat fractured analysis of the dynamics involved in rendering a decision on these questions.

Most of the authority in this area is based on the provisions of Federal Rule of Bankruptcy Procedure 9019, the provisions of which reads as follows:

Rule 9019. Compromise and Arbitration

(a) Compromise. On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor and indenture trustees as provided in Rule 2002

and to any other entity as the court may direct.

The courts are split as to the enforceability of these settlement agreements before court approval. Those cases are summarized in *In Re Sparks*, 190 B.R. 842 (N.D.Ill.1996).

The cases requiring court approval to be enforceable are *In Re The Leslie Fay Companies, Inc.*, 168 B.R. 294 (Bkrtcy.S.D.N.Y. 1994); *In Re Pugh*, 167 B.R. 251 (Bkrtcy. M.D.Fla.1994); *In Re Rothwell*, 159 B.R. 374 (Bkrtcy.D.Mass.1993) (relying on *In Re Lloyd, Carr and Co.*, 617 F.2d 882, 885 (1st Cir.1980), a case decided under the Bankruptcy Act and Bankruptcy Rule 9019(a)).

The cases allowing the enforceability of the agreement even absent court approval are: *In Re United Shipping Co.*, 1989 WL 12723 (Bkrtcy.D.Minn.1989); *In Re Lyons Trans. Lines, Inc.*, 163 B.R. 474 (Bkrtcy.W.D.Pa. 1994); *In the Matter of Cotton*, 127 B.R. 287 (Bkrtcy.M.D.Ga.1989), *aff'd*, 136 B.R. 888 (M.D.Ga.1992), *rev'd on other grounds*, 992 F.2d 311 (11th Cir.1993).

After discussion, the *Sparks* court concluded that approval was necessary to render a settlement enforceable. *In Re Sparks, supra*, at p. 845.

In its review, the court in *Sparks* analyzed the substance of the agreement as involving the sale of property as well as the confirmation of a plan. As that court pointed out, these are both items that require "notice and a hearing" under the Code. Since the debtor could not consummate the agreement without court approval, the receipt of higher offers pending that approval places the debtor in a most difficult spot as a fiduciary, i.e. "... either 'breaching' the initial agreement or supporting the initial agreement when a better offer has been made, thereby breaching his duty to the estate." *Id.* at 845.

The threshold issue when considering an agreement during bankruptcy, is the authority of a party (in this case, the debtor-in-possession) to enter into the agreement. That authority is spelled out in Section 363(c)(1) which reads as follows:

§ 363. Use, sale, or lease of property.

(c)(1) If the business of the debtor is authorized to be operated under section 721,

1108, 1203, 1204, or 1304 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

When the trustee or debtor-in-possession chooses to enter into a settlement under Federal Rule of Bankruptcy Procedure 9019, that decision is subject to court approval. Nevertheless, an agreement subject to a condition does not always negate the existence of a contract.

> To accept [an offer], the offeree must assent unconditionally to the offer as made, but the fact that the offeree makes a conditional promise is not sufficient to show that his acceptance is conditional. The offer itself may either expressly or by implication propose that the offeree make a conditional promise as his part of the exchange. By assenting to such a proposal the offeree makes a conditional promise, but his acceptance is unconditional. The offeror's promise may also be conditional on the same or a different fact or event.
>
> **Illustrations:** . . .
>
> 3. A makes a written offer to B to sell him Blackacre. By usage the offer is understood as promising a marketable title. B replies, "I accept your offer if you can convey me a marketable title." There is a contract.

*Restatement of the Law, Contracts, Second, § 59, Comment b.*

Court approval under Federal Rule of Bankruptcy Procedure 9019 is, thus, implied in law and does not detract from the conclusion that the agreement is binding as between the parties. Of course, if the compromise agreement did not concern matters within the ordinary course of the debtor's business, then the debtor (or debtor-in-possession) had no authority to enter into the compromise absent "notice and a hearing" and, therefore, the debtor cannot be bound by its terms. Conversely, if the subject matter of the agreement was within the ordinary course of business, there is little reason to excuse the debtor from an obligation to support its terms, at least until court rejection.

This very same analysis is equally applicable to agreements for the sale of real estate.

■ Not every sale of real estate is necessarily out of the ordinary course of the debtor's business. The very essence of a residential real estate development is to market real estate. Moreover, even if the sale is out of the ordinary course of business, court approval may not always be necessary. I realize that this position is contrary to some authority. *In Re Landscape Properties, Inc.*, 100 B.R. 445, 447 (Bkrtcy.E.D.Ark.1988) ("There simply is no contract without bankruptcy court approval.") *accord, In Re Broadmoor Place Investments, L.P.*, 994 F.2d 744 (10th Cir.1993). Nevertheless, the logic of the Code is compelling.

11 U.S.C. § 363(c)(1) authorizes transactions that take place within the ordinary course of business.

Section 363(b)(2) empowers the trustee to sell property "other than in the ordinary course of business" but only after "notice and a hearing". "After notice and a hearing" is specifically defined as

> after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances; but
>
> (B) authorizes an act without an actual hearing if such notice is given properly and if—
>
> (i) such a hearing is not requested timely by a party in interest; 11 U.S.C. § 102(1).

A plain reading of the statute is controlling if not ambiguous. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

It follows, therefore, that a sale, duly noticed and without objection, can be completed without court approval under the Bankruptcy Code of 1978. Notwithstanding this conclusion, sales under the previous controlling legislation, the Bankruptcy Act of 1898, did normally require court approval to be consummated. Bankruptcy Act § 70(f). *In Re*

*Blue Coal Corp.,* 168 B.R. 553 (Bkrtcy. M.D.Pa.1994).

Based on this conclusion, when the parties to an agreement of sale, contract to "condition" the sale on court approval, they do so of their own volition and not compelled by the statute. While "after notice and hearing" may be implied in law, court approval is not. It follows that the parties *can* be bound to the terms of an agreement of sale prior to court approval. Notwithstanding this conclusion, the debtor-in-possession or trustee is only possessed of the authority to engage in such a transaction after a notice period lapses without objection. He is thereafter not free to disregard the terms of his agreement even if court approval was a bargained for prerequisite.

Our analysis, therefore, leads to the following mechanical evaluation.

First, is the trustee or debtor-in-possession authorized under Section 363(c)(1) to do that which was agreed. Stated another way, is this in the ordinary course of business.

■ If the substance of the agreement is in the ordinary course of business, then the debtor-in-possession is bound to its terms. If the answer were any different, then no entity would contract with a debtor-in-possession that would be free to disregard its commitments. Even if subsequent court approval is necessary, as in Federal Rule of Bankruptcy Procedure 9019, the debtor-in-possession has an obligation to present the terms of its pledge to the court since court approval was implied in law.

■ Secondly, if the agreement deals with matters not in the ordinary course of business, then has notice been given? If so and if no objection to the notice is duly filed, then again the debtor-in-possession possesses the authority to do what is contemplated and can be bound to its terms despite the desire to secure subsequent court approval either because of the terms of the agreement or the desire of one the parties to secure a "comfort" order.

■ Of course, if a timely objection is filed to a noticed agreement to perform an act out of the ordinary course of business, then the debtor-in-possession does not have the authority to perform the action and cannot be bound to its terms until the objection is disposed of. While Section 363(b) does not require a court order approving the sale, there is still a need for a court order to identify the manner in which the court handled the objection. *Richard N. Tilton, Purchase and Sale of Assets in Bankruptcy Cases, § 14.8 (Supp.1991 at p. 79).* It would follow that the debtor-in-possession would not, in that case, be bound by the agreement until the objections were resolved.

The facts at issue indicate that the debtor-in-possession and Rinehart entered into an agreement on July 15, 1994. That agreement was duly noticed on July 19, 1994 setting an objection date of July 27, 1994.

The only objector was Ray Price, who indicated that he felt the sales price was inadequate and that he was willing to bid higher. Ray Price was a nominal creditor as well as a bidder.[1] While a mere bidder would normally not have standing to register an objection (*In Re Karpe,* 84 B.R. 926 (Bkrtcy.M.D.Pa.1988)), the validity of the objection would appear to have little to do with the need for a court order disposing of same and thus providing the debtor-in-possession with the power to act.

At the time of hearing and being confronted with an offer from Price to pay Nine Hundred Thousand Dollars ($900,000) for debtor's assets, the debtor attempted to have the court deny the motion without a hearing so a new contract could be negotiated with Price. The court indicated that if the debtor-in-possession advanced the motion to hearing, I would rule on the motion, but a denial of the motion was not necessarily a certainty.

The debtor-in-possession then considered its alternatives and, after reflection, moved to withdraw its motion to approve the sale, which the court approved.

1. The record does reveal that Price had earlier deposited the sum of Seventy Thousand Dollars ($70,000) with the debtor-in-possession pursuant to two earlier purchase efforts. See *In Re Stroud Ford, Inc.,* 190 B.R. 785 (Bkrtcy.M.D.Pa.1995) and 163 B.R. 730 (Bkrtcy.M.D.Pa.1993). These deposits may have qualified Price as an administrative claimant.

Just as in *In Re Martin*, 91 F.3d 389 (3d Cir.1996), "the [debtor-in-possession] was faced with a conflict between [its] fiduciary duty to the creditor body as a whole and the alleged duty to go forward with [an] ... agreement favoring one [party] but otherwise detrimental to the estate." *Id.* at 393.

While declining to decide the broader issue as to whether a trustee is bound by the terms of an agreement absent court approval, the *Martin* court did emphasize that they would not require the trustee to "champion" an agreement that was no longer in the best interests of the estate. The Third Circuit further cautioned that a trustee was prohibited from unilaterally venturing beyond the scope of the ordinary course of business of the debtor citing its previous decision in *In Re Roth American, Inc.*, 975 F.2d 949 (3rd Cir.1992). We believe that observation is insightful. When a debtor-in-possession contracts, it binds not only itself but it obligates the entire estate for the ramifications of its decisions. Fairness dictates that such an obligation should only be effective after notice and a hearing, if necessary. In this case, a hearing was necessary because a timely objection was filed. The debtor-in-possession was therefore free to disregard the terms of its commitment prior to court disposition of the objection.

This discussion does not address the situation that may have presented itself if the debtor-in-possession was in the business of selling automobile dealerships since such an operation would certainly have changed the debtor-in-possession's authority. Nevertheless, we conclude that the Plaintiff, William E. Rinehart, cannot prevail in his complaint. Our judgment is attached.

### ORDER

Judgment is hereby rendered in favor of the Defendants, Stroud Ford, Inc., Vincent and Helen Vecchio, and Raymond Price, III and against the Plaintiff, William Rinehart.

No damages and/or allowance is/are awarded to the Plaintiff with exception of any deposit funds which are ordered returned to the Plaintiff.