**In re Charles W. FRYE and Theresa A. Frye, Debtors.**

**Bankruptcy No. 93–11108.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Nov. 24, 1997.

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Chief Judge.

This case comes before the Court upon Motion of the Chapter 7 trustee, Robert G. Mayer (the "trustee"), of the bankruptcy estate of Charles W. Frye and Theresa A. Frye, for Authority to Compromise Claim. An Objection to the Motion to Compromise was filed first by the debtors which was subsequently resolved, and then by Audrey L. Fain ("Dr. Fain") and Concrete Masonry and Asphalt, Inc. ("CMA"). A hearing was held on Dr. Fain's and CMA's objection. At the hearing, the Court provided the parties an opportunity to file briefs addressing arguments that had been raised at the hearing. Briefs were filed by both parties. This Court has reviewed the arguments of counsel, the exhibits and the entire record in the case. Based upon that review, and for the following reasons, the Court finds that a valid settlement agreement existed upon which the trustee could move this court to compromise the claim and the motion for authority to compromise claim is granted.

The trustee moves this Court for authority to compromise a claim of the bankruptcy estate against Dr. Fain and CMA. There are two issues to be addressed. First, whether the oral agreement (the "Agreement") between the parties is binding, notwithstanding the fact that a proposed settlement agreement drafted by the attorney for Dr. Fain and CMA setting forth the terms of the oral agreement had not been signed by either party. Second, should the trustee be granted the authority to compromise the claim.

## I. BACKGROUND

Charles W. Frye and Theresa A. Frye (the "debtors") filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code in this Court on March 17, 1993. The case was later closed as a no asset case by order dated April 18, 1994. Thereafter, the trustee learned of two assets of the estate that had not been listed on the schedules filed with this Court.[1] As a result of this information the case was reopened on January 24, 1996.

At the time of his filing in 1993, Mr. Frye was the holder of a stock option in CMA and had been the sole shareholder of CMA. In 1994 because of conflicts regarding the operation of CMA, Mr. Frye agreed to leave the company. The parties structured a Termination and Indemnity Agreement and Mutual Release (the "Termination Agreement") whereby Dr. Fain and CMA agreed to buy out Mr. Frye's ownership interest in CMA. Dr. Fain and CMA failed to comply with the terms of the Termination Agreement which resulted in a claim of the debtors that arose against Dr. Fain and CMA. On or about November 29, 1994, the debtors commenced an action in the Circuit Court of Prince William County, Virginia against Dr. Fain and CMA for breach of the Termination Agreement. The Circuit Court entered a judgment against Dr. Fain and CMA on December 12, 1995 for $198,800.

After the trustee learned of the judgment he moved to reopen the bankruptcy case,

---

1. These two assets consisted of an interest in CMA, Inc. and the Termination Agreement between CMA and Audrey L. Fain and Charles Frye.

which was granted by order of this Court dated January 24, 1996. By this time, Dr. Fain and CMA had appealed the judgment to the Virginia Supreme Court. The trustee was permitted to intervene in the state court litigation. Prior to the final ruling on the appeal, Dr. Fain and CMA approached the trustee to settle the claim. After negotiating, the parties agreed to terms that were satisfactory to all involved. Mark Moorstein, Esq. the attorney for Dr. Fain and CMA drafted a proposed settlement agreement setting forth the terms that the parties had agreed to, and provided a copy to the trustee by letter dated October 21, 1996. The Agreement provided *inter alia* that Dr. Fain and CMA would pay $100,000 in full satisfaction of the claim. In order to fulfill the payment term, Dr. Fain was to pay with funds that she would receive from settlement of a malpractice action she filed against an attorney that had previously acted as corporate counsel for CMA and as a personal representative for Dr. Fain.

On November 6, 1996, the trustee moved for Authority to Compromise Claim pursuant to the Agreement, because, according to the trustee, the written proposed settlement agreement correctly set forth the terms orally agreed to by both parties. Notice of the motion was given to all creditors and all other parties in interest including Mr. Moorstein and the debtors.

On November 20, 1996, the debtors objected to the motion. The trustee met with counsel for the debtors and, with assistance from Mr. Moorstein and an associate from his office, eventually resolved the debtors' objection to the compromise. On February 26, 1997, the trustee advised Mr. Moorstein that the debtors' objection had been settled and that he was prepared to obtain final approval from this Court of the Agreement. Prior to the hearing on the motion, Mr. Moorstein contacted the trustee by letter dated March 26, 1997 to advise him that Dr. Fain and CMA had withdrawn the settlement offer. Despite this information, the trustee advised Mr. Moorstein that he would go forward with the motion and seek approval of the compromise. The trustee sent Mr. Moorstein a copy of a proposed order seeking to compel Dr. Fain to pay the trustee pursuant to the Agreement. Mr. Moorstein advised the trustee again that Dr. Fain was withdrawing her offer and wanted to meet to discuss new settlement terms. Later, the trustee learned that Dr. Fain had received and spent the funds from the malpractice action against her previous attorney with which she was going to pay the Agreement.

Through their attorney Mr. Moorstein, Dr. Fain and CMA filed an objection to the trustee's motion for Authority to Compromise and argued that the offer had never been accepted, the written proposed settlement agreement had not been executed by either party and acceptance was necessary to bind the parties. Further, Dr. Fain argued that the bankruptcy estate did not have a claim to compromise because the Virginia Supreme Court had reversed and remanded the judgment of the trial court that had awarded debtors judgment against Dr. Fain and CMA.

The trustee argued that an oral contract had been formed and that he accepted the Agreement when he filed the motion for authority to compromise claim and sought court approval of the Agreement. Further, the oral agreement was binding on the parties because it was supported by consideration.

The hearing on the motion to compromise the claim was held on May 20, 1997. The trustee testified that he believed there was a binding oral settlement agreement with Dr. Fain and CMA. In contrast, Dr. Fain testified that the trustee had never accepted the offer of settlement prior to her withdrawal of the offer.

This motion to compromise the claim was noticed to all parties including Mr. Moorstein and was pending for over four months before Dr. Fain and CMA filed their objection. It should also be noted that Dr. Fain's and CMA's objection was made after the money that was to be used to pay the Agreement had been spent, and after the Supreme Court of Virginia reversed and remanded the judgment entered against them.

For the following reasons, we find that a binding settlement agreement existed between the parties and that the trustee is

granted the authority to compromise the claim.

## II. DISCUSSION

■ This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) which entitles this court to hear and determine all core proceedings arising under title 11. 28 U.S.C. § 157(b)(2)(A) (1994). Core proceedings include matters concerning the administration of the estate which will also include the compromise of a claim by a trustee.

■ A valid claim exists that may be compromised. A claim is any "right to payment whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured...." 11 U.S.C. § 101(5) (1994). Here, although the judgment obtained by the debtors has been reversed and remanded by the Virginia Supreme Court, a claim of the estate still exists which may be compromised by the trustee.

■ Bankruptcy Rule 9019 governs compromise of a claim and permits a trustee to compromise or settle controversies to avoid the time and expense of litigating controversial claims. Fed.R.Bankr.P. 9019 (hereinafter "Rule"). Rule 9019 provides in pertinent part that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct." *Id.; see also In re Austin,* 186 B.R. 397, 399–400 (Bankr.E.D.Va.1995) (Tice, J.) (setting forth standard and additional factors courts should use in deciding to approve compromise of claim). A motion to compromise is made once the parties have reached an agreement upon which the compromise may be based. *In re Parkview Hospital–Osteopathic Medical Center,* 211 B.R. 603, 607–08 (Bankr. N.D.Ohio 1996). The trustee has the burden to show that the settlement is in the best interest of the estate. *Id.,* at 608–09; *see In re Hermitage Inn, Inc.,* 66 B.R. 71, 72

(Bankr.D.Colo.1986). In order to grant the trustee the authority to compromise a claim, an agreement or at least a proposed agreement must be in place between the parties. *See* Rule 9019(a); *Parkview Hospital–Osteopathic,* 211 B.R. at 607–09 (noting that proposed agreement is sufficient to seek court approval for authority to compromise).

## III. CONTRACT FORMATION

■ The first issue here is whether a compromise has been reached by the parties which involves the determination as to whether under state law, a binding oral contract to settle a claim has been reached. *Providers Benefit Life Insurance Co. v. Tidewater Group, Inc. (In re Tidewater Group, Inc.),* 8 B.R. 930, 931 (Bankr.N.D.Ga. 1981) (finding that determination of whether oral agreement was formed is governed by state law); *see also In re United Shipping Co.,* 1989 WL 12723, * 4 (Bankr.D.Minn. Feb. 17, 1989) (stating that "construction and enforcement of a settlement agreement is governed by principles of state contract law").

### A. Offer

It is settled law that in order for a valid contract to exist, there must be an offer that was accepted and consideration to support the contract as well as a meeting of the minds. *Snyder–Falkinham v. Stockburger,* 249 Va. 376, 381, 457 S.E.2d 36, 39 (1995). Here it is undisputed that an offer to settle was made by Dr. Fain and CMA through their attorney Mr. Moorstein. (Tr. 55).[2] Several factors support this conclusion. First, in the objection, Dr. Fain refers to an offer of settlement that was made to the trustee which Dr. Fain contends was never accepted. Also, at the hearing on May 20, 1997, Dr. Fain testified that the offer was made and thereafter withdrawn. Finally, both parties acknowledge that an offer was made by Dr. Fain and CMA, through their counsel in their briefs.

### B. Acceptance

As stated above a binding contract also requires acceptance which is a central issue

---

**2.** Hereinafter "Tr." refers to the transcript of the hearing held in this Court on May 20, 1997.

in this matter. The question at hand is whether the trustee's conduct of making the instant motion constituted acceptance of the offer. It is well settled that the "[u]ltimate resolution of the question whether there has been a binding settlement involves a determination of the parties' intention, as objectively manifested." *Snyder–Falkinham*, 249 Va. at 381, 457 S.E.2d at 39 (citing *Montagna v. Holiday Inns, Inc.*, 221 Va. 336, 346, 269 S.E.2d 838, 844 (1980); *Boisseau v. Fuller*, 96 Va. 45, 46, 30 S.E. 457, 457 (1898)). It is also settled law that "[o]nce a competent party makes a settlement and acts affirmatively to enter into such settlement, her second thoughts at a later time upon the wisdom of the settlement do not constitute good cause for setting it aside." *Id.* at 385, 457 S.E.2d at 41. The Virginia Court of Appeals has held that where the "terms of the agreement were not obscure, nor were the concepts unfamiliar to the litigants ... the outward expression of the parties in assenting to the agreement will control." *Richardson v. Richardson*, 10 Va.App. 391, 396, 392 S.E.2d 688, 691 (1990).

Here the trustee asserts that he accepted the offer through his action of moving this Court for an order authorizing compromise of the claim. While it is true that a party to a contract must convey his acceptance of the contract to the other party, this may be done in a variety of ways so long as the actions or conduct can be interpreted objectively as constituting an acceptance. By making a motion with notice to all parties including Dr. Fain and CMA, the trustee indicated his intent to be bound by the terms of the agreement that were orally agreed to and memorialized in the proposed settlement agreement prepared by Mr. Moorstein. The trustee testified that he believed that by making the motion he was conveying his acceptance of the terms and was in fact bound by the agreement. (Tr. 18–19). He also stated that he did not believe that signatures on the proposed written settlement were necessary to bind the parties because the terms had already been agreed to and in order for the contract to be fully enforceable, court approval of the settlement was necessary. (Tr. 32). Accordingly, we find that there was acceptance of the offer through the actions of the trustee which indicated an intent to be bound.

Additional evidence that both parties intended to be bound is that Dr. Fain and CMA did not object to the motion to compromise until four months after the motion was initially made and the time to object pursuant to the Rule had expired. This objection was made after Dr. Fain's and CMA's counsel assisted the trustee in resolving the objection of the debtors by providing relevant information to the trustee to ensure that the compromise would be approved by this Court. Additionally, the objection was made only after the money that was to be used to pay the compromise was spent by Dr. Fain. We find that the failure to object timely and the affirmative act of rendering assistance to further the motion to compromise by Dr. Fain's and CMA's counsel constitutes a recognition of the acceptance by the trustee of the offer made by Dr. Fain and CMA.

## C. Consideration

The next element necessary for a contract is consideration. It is settled law in Virginia that "[t]he termination of [a] disputed claim[ ] is valid and sufficient consideration to support a settlement agreement. Thus, where as here, there is mutual assent and valuable consideration given, a valid contract exists." *Richardson*, 10 Va.App. at 399, 392 S.E.2d at 692; *see also Montagna*, 221 Va. at 346, 269 S.E.2d at 844. Here, acceptance by the trustee of $100,000 for a claim of nearly $200,000 is sufficient consideration to support this compromise.

## VI. ORAL CONTRACT SUFFICIENT

An oral contract to settle a dispute is enforceable so long as all of the elements for a contract to be formed exist and the terms are reasonably certain, definite and complete to enable the parties and courts to give the exact meaning to the agreement. *Richardson*, 10 Va.App. at 395, 392 S.E.2d at 690 (citing *Smith v. Farrell*, 199 Va. 121, 128, 98 S.E.2d 3,7–8 (1957)); *Tidewater Group*, 8 B.R. at 931.

This Court has held that a

"[m]eeting of the minds or mutual assent to the terms is a basic requirement for the

formation of a contract. In order to achieve a meeting of the minds there must be both an offer and acceptance of the contract's provisions. Both parties must have a clear understanding of terms of agreement and intention to be bound thereby before an enforceable agreement is created."

*LCS Homes, Inc. v. Driggs Building Systems, Inc.,* 103 B.R. 736, 748 (Bankr.E.D.Va. 1989) (Bostetter, C.J.) (citations omitted).

Further, this Court noted the Virginia Supreme Court's definition in *Smith v. Farrell,* that " '[a]n uncertain contract is one which may, indeed, embrace all material terms, but one of them is expressed in so inexact indefinite or obscure language that the intent of the parties cannot be sufficiently ascertained to enable the court to carry it into effect.' " *Id.* (quoting *Smith,* 199 Va. at 128, 98 S.E.2d at 7). Here, unlike the parties in *In re LCS* or *Smith v. Farrell,* the parties did have a meeting of the minds with respect to all of the essential terms of the agreement. Neither party identified nor can this Court find any material term upon which the parties did not agree. Further, we find that the parties intended to be bound by the Agreement as set forth in the writing, therefore, an enforceable oral contract was formed.

## V. SETTLEMENT AGREEMENTS FAVORED

We recognize that settlement agreements between parties to lawsuits are designed to put an end to litigation and are favored by the law. *Richardson,* 10 Va.App. at 399, 392 S.E.2d at 692 (citing *Stamie E. Lyttle Co. v. County of Hanover,* 231 Va. 21, 26, 341 S.E.2d 174, 178 (1986)). However, the essential elements of a valid contract must exist to support a binding compromise; there must be a complete agreement on all essential terms including acceptance of an offer as well as valuable consideration. *Snyder–Falkinham,* 249 Va. at 381, 457 S.E.2d at 39 (citing *Montagna v. Holiday Inc.,* 221 Va. 336, 346, 269 S.E.2d 838, 844 (1980)). Accordingly, we find based on the evidence that an oral settlement was agreed to by the parties.

## VI. WRITING NOT NECESSARY

Dr. Fain and CMA argue that the offer was not accepted because the proposed settlement agreement sent to the trustee by Mr. Moorstein was not signed by either party. The better rule of law is that a formal writing is not necessary. For example, the Virginia Court of Appeals has held that "[w]here parties involved in contract negotiations do not expressly state that the validity of an agreement between them is subject to the preparation, approval, and signing of a formal written contract, it is a question of fact whether they intended that no contract would exist until a written agreement was executed." *Richardson,* 10 Va.App. at 396, 392 S.E.2d 688. *Richardson* also held that when "the parties agree that a formal, executed writing is a prerequisite to a binding contract, there is a rebuttable presumption that no contract existed between them until the writing is made and signed. However, when there is no understanding that the agreement will be reduced to writing as a prerequisite to the formation of a contract, no presumption arises, and the proponent of the oral contract has the burden of proving all elements of a valid enforceable contract." *Id.* at 396, 392 S.E.2d 688 (citing *Atlantic Coast Realty Co. v. Robertson's Executor,* 135 Va. 247, 253–54, 116 S.E. 476, 478 (1923)).

Additionally, the better rule of law is that "even though ... parties contemplated that a formal, written [agreement] memorializing the compromise would be executed ... [i]f, as here, the parties are fully agreed upon the terms of the settlement and intend to be bound thereby, 'the mere fact that a later formal writing is contemplated will not vitiate the agreement.' " *Snyder–Falkinham,* 249 Va. at 381, 457 S.E.2d at 39 (citing *North America Managers, Inc. v. Reinach,* 177 Va. 116, 121, 12 S.E.2d 806, 808 (1941); *Boisseau,* 96 Va. at 46, 30 S.E. at 457).

Although Mr. Moorstein sent the trustee a proposed settlement agreement setting forth the terms of the agreement which may indicate that the contract was to be reduced to writing, there is nothing in the writing itself or any other evidence presented that would

lead this Court to conclude that the parties were not bound by an oral agreement.[3]

## VII. AGREEMENT BINDING PENDING COURT APPROVAL

We then turn to the issue as to whether the agreement is binding pending approval by this Court. Courts are divided on this issue, and the Fourth Circuit has not yet ruled on the issue. On one hand, some courts hold that a "debtor's agreement to compromise is binding upon all parties to the agreement pending court approval of the agreement." *Cotton v. Banksouth (In re Cotton)*, 136 B.R. 888, 890 (M.D.Ga.1992); *rev'd on other grounds*, 992 F.2d 311 (11th Cir.1993) (citing *Providers Benefit Life Insurance Co. v. Tidewater Group, Inc. (In re Tidewater Group, Inc.)*, 8 B.R. 930 (Bankr. N.D.Ga.1981)); *see also White v. C.B. Hannay Co. (In re Lyons Transportation Lines, Inc.)*, 163 B.R. 474, 476 (Bankr.W.D.Pa.1994) (stating that absent fraud, settlement agreement is binding pending bankruptcy court approval); *United Shipping*, 1989 WL 12723, at *5. These courts reason that the agreement is binding on the parties and the absence of court approval does not disqualify the fact that an agreement was reached between the parties. It simply means that the court has yet to approve the agreement. The court in *United Shipping* looked to the intent of Rule 9019 and found that it was to protect other creditors against bad deals made between one creditor and the debtor and to encourage settlement to avoid litigating highly contested claims *United Shipping*, 1989 WL 12723 at *5; *but see In re Sparks*, 190 B.R. 842, 843 (Bankr.N.D.Ill.1996) (citing

*In re Leslie Fay Cos., Inc.*, 168 B.R. 294 (Bankr.S.D.N.Y.1994); *In re Pugh*, 167 B.R. 251 (Bankr.M.D.Fla.1994); *In re Rothwell*, 159 B.R. 374 (Bankr.D.Mass.1993); *In re Lloyd Carr and Co.*, 617 F.2d 882, 885 (1st Cir.1980) (decided under Bankruptcy Act)). Each of these cases holding contrary to our decision can be distinguished from the facts of the case at bar to support this Court's finding that a settlement agreement is binding pending court approval.[4]

*Sparks* reviewed the intent of the Code and found that in most instances, there was no requirement for judicial approval of settlement agreements if the agreement was for the sale of assets of the estate in the ordinary course of business. Where, however, judicial approval was necessary for a transaction to go forward, an agreement could not be binding absent the required approval. *Sparks*, 190 B.R. at 843; *see also Rinehart v. Stroud Ford, Inc. (In re Stroud Ford, Inc.)*, 205 B.R. 722, 726–27 (Bankr.M.D.Pa.1996) (stating that where sale not in ordinary course of business is objected to and hearing is necessary, agreement to sell is not binding without court approval).[5] In *Leslie Fay, Rothwell* and *Lloyd, Carr & Co.*, the parties failed to give notice of a motion to compromise a claim to any interested party of a compromise of a claim to permit objections to be raised and thereby failed to comply with Rule 9019. Such noncompliance is the stated reason the courts gave in all of the abovementioned cases for not finding that a settlement was binding without court approval. *Leslie Fay*, 168 B.R. at 305; *Rothwell*, 159 B.R. at 379; *Lloyd, Carr and Co.*, 617 F.2d

3. A case factually similar to this also held that the outward manifestations of the parties such as oral and written communications supported the conclusion that the parties had agreed to the essential terms of the settlement agreement. Even though the agreement had been reduced to writing but the settlement papers were never signed or returned to the other party, the existence of a contract will not be negated. *United Shipping Co.*, 1989 WL 12723, at *5.

4. In *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3rd Cir.1996) which also found that the agreement was not binding on the parties, the court reviewed whether an agreement entered into by the trustee to sell assets of the estate not in the ordinary course of business was binding

and whether the trustee was in breach if she agreed to accept an offer higher than the original offer. If she was in breach of the agreement, would she be deemed to have breached her fiduciary duty. In this case however, the Court merely did not approve the compromise. Further, it expressly stated that it was not addressing the issue directly confronting this Court, "whether, absent intervention of a bankruptcy court, parties are bound by the terms of a settlement pending final approval of the bankruptcy court." *Martin*, 91 F.3d at 395.

5. *Stroud* found that binding the estate to an agreement would be fair only after notice and a hearing as required by the Code. *Stroud*, 205 B.R. at 727; 11 U.S.C. § 363(b)(1) (1994).

at 885. Even more egregious is the conduct of the trustee in *Pugh.* There the trustee purportedly settled a claim of the estate with the debtors, although the court was unable to find that a contract existed. Furthermore, the trustee did not make a motion for the court to approve the compromise or give notice to interested parties that the claim had been compromised as required by Rule 9019. *Pugh,* 167 B.R. at 253. Failure to move or to give notice are not issues in the case at bar.

The facts in this present case are most similar to *White v. Hannay Co. (In re Lyons Transportation Lines, Inc.)* and *United Shipping Co.*, where there was an offer by a third party made to the trustee (or debtor in possession) which was accepted to settle a controversy for an amount less than the actual claim. In *Lyons,* the court held that "[a]bsent actual or constructive fraud, a settlement agreement is binding as between the parties pending the required bankruptcy court approval." *Lyons,* 163 B.R. at 476. *United Shipping* opined that because the reasons for approving a settlement are different than whether a settlement exists, "absence of court approval does not mean that the parties did not agree to the settlement. It only means that the court has not yet approved it." *United Shipping,* 1989 WL 12723, at * 5.

This position is further supported by Virginia State courts which are settled in finding that "[t]he parties to a pending lawsuit may by oral agreement compromise and settle the same, which will bind them although not reduced to writing.... Where parties to a case pending in court enter into a definite, certain and unambiguous oral settlement agreement, compromising the issue, and there being no denial of the agreement, it is the duty of the court to make the agreement the judgment of the court and thereby terminate the litigation." *Richardson,* 10 Va.App. at 398, 392 S.E.2d at 691 (citing *Herndon v. Herndon,* 227 Ga. 781, 784, 183 S.E.2d 386, 388 (1971)).

We conclude that the decisions supporting our position are the better rule of law. In addition, state contract law governs the issue presently before this Court. It would be inequitable to allow a party to an otherwise enforceable agreement who has given the proper notice and scheduled a hearing under Rule 9019 to revoke an offer after it had been accepted merely because the court had not yet heard the motion to approve the compromise of the claim. The agreement is therefore binding on the parties pending approval by this Court.

## VIII. APPROVAL OF COURT AND GRANT OF AUTHORITY TO COMPROMISE CLAIM

■ We approve the Agreement and grant the trustee authority to compromise the claim of the estate against Dr. Fain and CMA. In order to approve a compromise, this court must look at various factors and determine whether the compromise is in the best interest of the estate and whether it is fair and equitable. These factors include:

1. Probability of success in litigation;
2. The potential difficulties if any in collection;
3. The complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and
4. The paramount interest of the creditors.

*Martin,* 91 F.3d at 393; *Martin v. Kane (In re A & C Properties),* 784 F.2d 1377 (9th Cir.), *cert. denied sub nom., Martin v. Robinson,* 479 U.S. 854, 107 S.Ct. 189, 93 L.Ed.2d 122 (1986); *Parkview Hospital,* 211 B.R. 603, 607–09 (Bankr.N.D.Ohio 1996); *see also* 10 Collier On Bankruptcy ¶ 9019.02 (Lawrence P. King, et al., eds. 15th ed. rev. 1997). The trustee then has the burden of persuading the court that the compromise is fair and equitable and should be approved. *A & C Properties,* 784 F.2d at 1381.

■ Courts have held that where the evidence supports a finding that the compromise is thorough and comprehensive, and the court making the determination is familiar with the record and all of the evidence, then the court has not abused its discretion in granting authority to compromise a claim. *A & C Properties,* 784 F.2d at 1383.

■ Here, it is likely that the debtors would be successful in the litigation if the

matter were to be retried in the Virginia state court. The debtors prevailed in the initial action and although the Virginia Supreme Court reversed and remanded the judgment for another trial, the order directed that in the new trial, parol evidence was to be considered in determining whether Dr. Fain has a contractual obligation to Mr. Frye. It is likely that the court could rule in favor of Mr. Frye even though parol evidence is admitted.

Second, with respect to collection of the settlement, even though Dr. Fain claims that the money from the malpractice action has been spent, surely there would be some way for CMA or Dr. Fain to meet the terms of the Agreement. Further, collection would be twice as difficult if the debtors were to prevail on the action and obtain a judgment for nearly $200,000 instead of a settlement of $100,000.

Third, on the issue of the complexity of matter and the expense and inconvenience of the litigation. If the claim were to be retried, it would cost both the debtor and the estate substantial time and money which would necessarily reduce the amount to be distributed to the creditors. In addition, the acts of the trustee to intervene in the action would cause additional delay.

Finally, the benefit to the creditors is obvious. Initially, this case was closed after the trustee filed a Report of No Distribution which did not permit any of the creditors to be paid anything by the estate. If the settlement were to be approved at this time, it could be distributed to the creditors.

This Court having heard all of the testimony and reviewed all of the evidence finds that the compromise is fair and equitable and in the best interest of the estate. The compromise is approved.