GEORGIA ANNE SNYDER-FALKINHAM

V.

BRUCE C. STOCKBURGER, ET AL.

Record No. 940660

April 21, 1995

Present: All the Justices

Michael S. Horwatt (Charles F. Wright; Michael Horwatt & Associates, on briefs), for appellant.

Frank B. Miller, III; Ronald D. Hodges (S. Vernon Priddy, III; Matthew J. Ide; Marshall H. Ross; Sands, Anderson, Marks & Miller; Wharton, Aldhizer & Weaver, on brief), for appellees.

Amicus Curiae: (Robert D. Benjamin, on brief), in support of appellant.

Amicus Curiae: (David Cohen, on brief), in support of appellant.

JUSTICE COMPTON delivered the opinion of the Court.

In this dispute spawned from pending civil litigation, the questions on appeal are whether the trial court erred in ruling that the plaintiff agreed to a settlement of the underlying action and whether the trial court erred in holding that the plaintiff's trial attorneys had the authority to have the action dismissed with prejudice.

In November 1991, appellant Georgia Anne Snyder-Falkinham filed the underlying suit, a legal malpractice action, against appellees Bruce C. Stockburger, an attorney at law; Gentry, Locke, Rakes and Moore, a Roanoke law firm in which Stockburger was a partner; and certain other named partners in the law firm, seeking compensatory and punitive damages. The plaintiff asserted that, beginning in early 1980, an attorney-client relationship existed between her and defendant Stockburger. She claimed that

this relationship evolved over the years "to the point where defendant Stockburger was providing legal and financial advice in all of the plaintiff's personal and business dealings."

She asserted that, with Stockburger's advice, she began a construction business that became involved in, among other things, residential housing projects in Blacksburg and Radford. She contended that she sustained actual losses of $6.7 million as the result of the defendants' alleged breach of fiduciary duties, professional negligence, and fraud and misrepresentation in handling her business affairs. In responsive pleadings, the defendants denied all the plaintiff's allegations of wrongful conduct.

As a January 31, 1994 trial date approached, defendant Stockburger, by counsel, moved that the case be referred to a dispute resolution evaluation session pursuant to Virginia's Dispute Resolution Program. Code §§ 8.01-576.4 to -576.12. The trial court granted the motion, referred the matter to such a session, and directed the parties to return to court on January 31 irrespective of the outcome of the referral.

The plaintiff and her trial attorneys, Thomas L. Rasnic and Roger E. Jenne; defendant Stockburger and his attorney; and the attorney for the other defendants appeared in Richmond on January 25 for a three-hour evaluation session. At the conclusion of the session, certain terms of agreement relating to the litigation and attributed to the plaintiff were recorded on a Mediation Memorandum of Agreement by one of the mediators.

Over the next several days, the parties continued to negotiate for a full and final settlement. On Sunday, January 30, the day before trial, the plaintiff, her trial attorneys, and the attorneys for the defendants engaged in extensive discussions in a Roanoke hotel. Late that evening, according to defendants, the plaintiff agreed to all terms of a proposed settlement, a fact that the plaintiff now denies.

The next morning, January 31, plaintiff's trial attorney Rasnic and one of defendants' attorneys went to the courthouse where the trial court entered two orders, each dismissing the underlying action with prejudice. The orders carried the endorsements of plaintiff's trial attorneys and the attorneys for the defendants. One order dismissed the law firm's individual partners, except Stockburger, and dismissed the claim for punitive damages. The other order was a general dismissal and contained a provision per-

mitting a contempt citation for violation of the confidentiality portion of a "Mutual Release and Settlement Agreement."

Shortly after noon on January 31, plaintiff was called by one of her trial attorneys and was asked to come to Roanoke from her home in Blacksburg to execute the settlement papers memorializing the agreement. She told the attorney "that she was still thinking about" the settlement. Apparently, the plaintiff had consulted earlier that morning with another attorney, one of her present appellate counsel.

On February 3, 1994, both appellate counsel filed a praecipe noting their appearance as counsel for the plaintiff for the purpose of filing a motion to vacate the January 31 dismissal orders. Plaintiff's trial counsel then filed a notice and motion to withdraw as counsel for the plaintiff.

Plaintiff's appellate counsel then filed a motion to vacate the January 31 orders, and defendants' counsel filed a motion to confirm the settlement. On February 15, 1994, the trial court conducted a hearing on the respective motions, after entering an order relieving plaintiff's trial counsel as counsel of record.

Upon considering the testimony of 16 witnesses and reviewing numerous exhibits, the trial court, stating the decision involved a question of "credibility," found "as a fact that the plaintiff did agree to the terms of the settlement, and that the attorneys did have actual as well as implied authority to settle the case." We awarded the plaintiff an appeal from the February 15, 1994 order denying the plaintiff's motion to vacate and sustaining the defendants' motion to confirm.

On appeal, plaintiff assigns four errors. Two assigned errors invoke the provisions of Code § 8.01-576.10, which deals with the confidentiality of dispute resolution proceedings. As pertinent, the statute provides: "Any communication made in or in connection with the dispute resolution proceeding which relates to the controversy, whether made to the neutral or dispute resolution program or to a party, or to any other person if made at a dispute resolution proceeding, is confidential."

Relying on the statute, the plaintiff first contends that, during the February 15th hearing, the trial court erred when it admitted evidence of discussions and events which occurred in the court-ordered mediation proceeding bearing upon the question of whether the plaintiff's trial attorneys had authority to have her case dismissed with prejudice. Still relying on the statute, plaintiff

next contends that the trial court erred by admitting in evidence the Mediation Memorandum of Agreement to establish the ultimate existence of a settlement agreement.

We do not reach for decision either of those issues because they are procedurally barred by Rule 5:25. As applicable here, this rule of appellate procedure provides that error will not be sustained to any ruling of the trial court admitting evidence unless the objection to such admission "was stated with reasonable certainty at the time of the ruling." Although admission of the evidence challenged in these two assignments of error was the subject of several objections by plaintiff's counsel during the hearing, not once did counsel cite to the trial judge or rely on Code § 8.01-576.10, or any other statute dealing with dispute resolution proceedings. Indeed, three days after entry of the February 15th order, plaintiff, by counsel, filed a ten-page Motion for Reconsideration, and did not mention any of the foregoing statutes. Thus, the trial court was never afforded the opportunity to address and rule on the issues that the plaintiff now raises, and we will not consider them for the first time on appeal.

The remaining assignments of error challenge the sufficiency of the evidence on proof of a settlement and on proof of the authority of plaintiff's trial counsel to move for entry of the orders dismissing the underlying action. Prior to a discussion of the evidence on those issues, a review of applicable, settled principles of law is appropriate.

"The law favors compromise and settlement of disputed claims." *Bangor-Punta Operations, Inc.* v. *Atlantic Leasing, Ltd.*, 215 Va. 180, 183, 207 S.E.2d 858, 860 (1974). But the essential elements of a valid contract must exist to support a binding compromise settlement; there must be a complete agreement including acceptance of an offer as well as valuable consideration. *Montagna* v. *Holiday Inns, Inc.*, 221 Va. 336, 346, 269 S.E.2d 838, 844 (1980). Ultimate resolution of the question whether there has been a binding settlement involves a determination of the parties' intention, as objectively manifested. *Id.*; *Boisseau* v. *Fuller*, 96 Va. 45, 46, 30 S.E. 457, 457 (1898).

An attorney at law, merely by virtue of being retained by the client, has no authority to compromise the client's claim without the latter's consent. *Dawson* v. *Hotchkiss*, 160 Va. 577, 581-82, 169 S.E. 564, 565 (1933). Nevertheless, the attorney has full authority to act on behalf of the client in the conduct of litigation

before the court, including making admissions and factual stipulations. *Harris* v. *Diamond Constr. Co.*, 184 Va. 711, 722, 36 S.E.2d 573, 578 (1946).

■ An attorney's general authority permits the attorney to discontinue a pending action by a dismissal without prejudice; but this general authority gives the attorney no right to discharge or terminate a cause of action by a dismissal on the merits, such as by a dismissal with prejudice, without special authority or acquiescence on the part of the client. *Virginia Concrete Co.* v. *Board of Supervisors of Fairfax County*, 197 Va. 821, 827, 91 S.E.2d 415, 420 (1956).

■ When a civil case is tried by a court without the intervention of a jury and, as here, a party objects to the decision on the ground that it is contrary to the evidence, the trial court's judgment will not be set aside on appeal "unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it." Code § 8.01-680. The conclusions of the trial court under these circumstances are entitled to "great weight." *Dawson*, 160 Va. at 581, 169 S.E. at 565.

■ In summarizing the evidence, we shall apply established appellate principles and recite the facts in the light most favorable to the defendants, who prevailed below. Viewing the record in this manner, we hold there is competent, credible evidence to support the trial court's factual findings (1) that the parties, including the plaintiff, voluntarily entered into a complete and final settlement agreement, and (2) that the plaintiff's trial attorneys were authorized to dismiss her action with prejudice. We will assume, without deciding, that the defendants had the burden of proof on both of these issues.

The plaintiff's trial attorneys, Rasnic (a member of the Virginia Bar) and Jenne (a Tennessee lawyer), were working pursuant to a written contract of employment that provided for an attorney's fee of 40 percent of the amount recovered. The contract specified that the attorneys were "authorized to effect a settlement or compromise, subject to the client(s) approval."

The trial court's order referring the case to the dispute resolution evaluation session was entered on December 21, 1993. The order provided that if, within 14 days after entry of the order, the plaintiff objected to the referral, she would be excused from attendance at the session. As we have stated, the plaintiff appeared at the session accompanied by Rasnic and Jenne.

■ During the session, one of the persons conducting the proceedings asked the participants to identify themselves and said it was the practice for the individual parties to speak at the session rather than have their attorneys speak for them. At that time, the plaintiff "very clearly" made her position known. She said, "I will have my attorneys speak for me; I am not going to make any statements on my own behalf." According to the plaintiff, she spoke only "about two sentences" during the three-hour session.

During the session, the plaintiff agreed on several issues in the presence of the other participants. Each of the items was written on the Mediation Memorandum of Agreement, and the wording was read back to the participants and discussed in detail. Although her attorneys negotiated and spoke for her, the plaintiff conveyed to all present her agreement with the items discussed. The items of agreement during the session included the plaintiff's promise to waive her claim for punitive damages, her promise to waive any claim in excess of the defendant law firm's professional liability insurance policy limits, her promise to nonsuit all individual defendants other than Stockburger, and the promise of the law firm's liability insurer to withdraw its reservation of the right to deny coverage to certain defendants.

During the marathon negotiating session on January 30th at the hotel, numerous telephone and face-to-face conferences took place among counsel for the parties, with discussions between the plaintiff and her trial attorneys interspersed. Many varied topics were considered including the participation of plaintiff's two children in a release of claims, the tax consequences if the settlement involved a transfer of capital stock in an entity controlled by plaintiff and Stockburger, the disposition of a promissory note for $25,000 made by Stockburger payable to plaintiff, and, of course, the amount of money that would be paid the plaintiff in settlement of her claims.

Finally, late in the evening on January 30th, one of counsel for the defendants spoke by telephone with Jenne and advised that payment of an increased settlement amount was virtually certain to be approved. Jenne then conferred again with the plaintiff, and she agreed "to all the terms of the settlement at that time" without "any reservation."

■ The essence of the settlement, according to Jenne's testimony, was that "x number of dollars" was to be paid the plaintiff, "she was going to accept that amount of money" and execute a

release, "she was going to cancel the $25,000 note," and the entire settlement was to be confidential. Jenne said the results obtained in the dispute resolution session became "more or less moot" when the final settlement was reached on January 30th and the final agreement superseded the mediation agreement.

When the compromise was reached, everyone ceased trial preparations. The plaintiff called her brother, her sister, her bookkeeper, and her son. During one of the telephone conversations, the plaintiff was overheard to say, "The case has been settled." Each of the persons called testified that plaintiff advised them late Sunday evening that the trial scheduled for Monday had been cancelled. Jenne's paralegal learned of the late developments when the plaintiff told her the case "was settled." The husband of Rasnic's paralegal, Ronnie L. Robbins, spoke with the plaintiff during Sunday evening. She told him, "You know, Ronnie, the legal system really sucks. Those people knew the case was going to settle three or four months ago, and they are dragging it out as long as they can because they are on a ticker."

On Monday morning, January 31st, Stockburger's attorney called Jenne at 7:30 a.m. to tell him that the settlement amount had received final approval late the previous night. Jenne immediately called the plaintiff, who apparently was at her Blacksburg home, and informed her of the final approval and that the settlement was "a done deal." Jenne advised that he would call her again when "we got the paperwork together" to memorialize the agreement. He also advised her that Rasnic would be "going to the courthouse" with an attorney for the defendants. Counsel met the trial judge that morning and presented drafts of the dismissal orders, which he entered.

■ Near 12:50 p.m. on January 31st, when the plaintiff was asked to come to Roanoke to sign the settlement papers memorializing the agreement and when she told Jenne that "she was still thinking about it," Jenne said to her, "What do you mean, you're still thinking about it . . . this deal's been settled, it's over with; we need you to get up here and get the paperwork completed." Both Jenne and the plaintiff became "angry and upset," and she told him that she had talked with one of her expert witnesses, who discussed the extent of her monetary damages and said her trial attorneys "were not prepared to fight the case for her." She stated to Jenne that "she was not going forward with it at this point" and that "we would be hearing from her new lawyer from Wash-

ington, D.C." in about an hour. Contrary to the plaintiff's testimony, there is overwhelming credible evidence to support the conclusion that this was the first time plaintiff indicated she was not pleased with the settlement terms or that she thought no settlement had been reached.

As we have indicated, the record is replete with competent evidence to support the trial court's factual finding that the plaintiff orally agreed to a binding settlement. Paraphrasing *Montagna* and *Boisseau*, we conclude that her intention to compromise was objectively manifested, as shown by the evidence we have just recited.

Once a competent party makes a settlement and acts affirmatively to enter into such settlement, her second thoughts at a later time upon the wisdom of the settlement do not constitute good cause for setting it aside. *Moreland* v. *Suttmiller*, 397 S.E.2d 910, 914 (W.Va. 1990). That is what occurred here. The record establishes conclusively that from the time of the Richmond mediation session, when several items of the compromise were negotiated, until late in the evening on January 30th, the plaintiff fully agreed to the essential terms of the settlement. Not until she had conversations with her "expert witness" and another attorney during the morning of January 31 did she voice any objection to the agreement, and embark on a campaign to repudiate it. That was too late. By that time, the settlement was a "done deal."

Contrary to the plaintiff's contention on appeal, the settlement was binding even though these parties contemplated that a formal, written "Mutual Release and Settlement Agreement" memorializing the compromise would be executed. If, as here, the parties are fully agreed upon the terms of the settlement and intend to be bound thereby, "the mere fact that a later formal writing is contemplated will not vitiate the agreement." *North America Managers, Inc.* v. *Reinach*, 177 Va. 116, 121, 12 S.E.2d 806, 808 (1941); *Boisseau*, 96 Va. at 46, 30 S.E. at 457.

Finally, there is no merit to the plaintiff's contention the trial court erred in ruling that her trial attorneys lacked authority to have her case dismissed with prejudice. Again, the evidence to the contrary is overwhelming.

The analysis of this issue must begin with the provisions of the contingent-fee contract of employment. It authorized plaintiff's trial attorneys "to effect a settlement or compromise" of the

underlying action. Next, during the Richmond mediation session, the plaintiff "very clearly," acting consistently with the authority given in the written contract, orally empowered Rasnic and Jenne to "speak for" her during the negotiations. The record establishes that this authority was never revoked, either expressly or impliedly, until after noon on January 31st and after the settlement was consummated.

But, as we have said, the general authority of an attorney does not give counsel the right to dismiss the client's cause of action with prejudice, without "special authority or acquiescence" on the part of the client. *Virginia Concrete Co.*, 197 Va. at 827, 91 S.E.2d at 420. Both special authority and acquiescence existed here. For example, Jenne testified that when he and Rasnic endorsed the drafts of the dismissal orders during the morning of January 31st, their "authority and direction" from the plaintiff was that the case "was settled, and that all of her claims were dismissed with prejudice." Jenne was asked, "And what was the basis upon which you held that position and that understanding with your client?" He responded, "Her direction to us."

For these reasons, we conclude that the trial court did not err, and the orders entered on January 31, 1994 and the order entered February 15, 1994 will be

*Affirmed.*