**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CRANBROOK INVESTORS, LIMITED, A
Texas Limited Partnership,
<u>Plaintiff-Appellant,</u>

v.

GREAT ATLANTIC MANAGEMENT
COMPANY, INCORPORATED, A Virginia
Corporation; EDWIN A. JOSEPH, JR.;

No. 98-2631

CRANBROOK, INCORPORATED, A
Virginia Corporation; ATLANTIC
PROPERTIES ASSOCIATES, LIMITED
PARTNERSHIP, A Maryland Limited
Partnership; ATLANTIC PROPERTIES
TRUST, INCORPORATED, a Maryland
Corporation,
<u>Defendants-Appellees.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Newport News.
Raymond A. Jackson, District Judge.
(CA-97-97-4)

Argued: September 23, 1999

Decided: November 10, 1999

Before MURNAGHAN and MOTZ, Circuit Judges,
and GOODWIN, United States District Judge
for the Southern District of West Virginia, sitting by designation.

_____

Reversed and remanded by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Walter DeKalb Kelley, Jr., WILLCOX & SAVAGE, P.C., Norfolk, Virginia, for Appellant. Charles Frederick Witthoefft, HIRSCHLER, FLEISCHER, WEINBERG, COX & ALLEN, P.C., Richmond, Virginia, for Appellees. **ON BRIEF:** Michael R. Katchmark, WILLCOX & SAVAGE, P.C., Norfolk, Virginia, for Appellant. Ian J. Wilson, HIRSCHLER, FLEISCHER, WEINBERG, COX & ALLEN, P.C., Richmond, Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Cranbrook Investors, Ltd. filed the instant case on August 15, 1997 against Great Atlantic Management Company, Inc., its officers and related entities. The suit arose out of a purported agreement between the parties to become partners in a real estate venture. Cranbrook alleged causes of action for breach of contract, common law fraud, violation of federal securities laws and promissory estoppel. The cause of action for violation of the federal securities laws was voluntarily dismissed with prejudice by an order entered on March 27, 1998. On May 5, 1998, the district court entered summary judgment in favor of the defendants on Cranbrook's cause of action for promissory estoppel. Neither of those decisions is a subject of Cranbrook's appeal.

On September 30, 1998, the district court granted summary judgment to the defendants as to the remaining causes of action for breach of contract and common law fraud. That decision is the only subject of this appeal.

In its September 30 opinion, the district court observed that relating to the motion for summary judgment, "a great deal of extraneous

2

information has been asserted by the parties." The same is true on appeal. However, we will deal with only the salient issues.

In 1994, defendants sold a 49% interest in Cranbrook Club Apartments ("CCA") to plaintiff. CCA was the second property the parties had owned as partners with one another.

In February 1995, the defendants undertook to sell CCA to a third party. Under the Limited Partnership Agreement for CCA, Cranbrook reserved the right to block any sale of CCA unless the sale proceeds were sufficient to pay off Cranbrook's capital contribution and a special "preferred return." However, ongoing renovations to CCA had proven costly, and its market value had fallen. Under these circumstances, Cranbrook asserted that its consent was required for the defendants to sell (though defendants have contested that interpretation).

The defendants requested that Cranbrook approve the sale, but it refused, believing that a greater amount would be realized if the transaction were delayed. Cranbrook expressed its desire to be "made whole" on its investment.

The parties began discussing possible solutions. According to Cranbrook, one possibility was to make it "whole" by granting it a partnership interest on favorable terms in another of defendants' properties, Banyan Bay Apartments. In exchange, Cranbrook would give its consent to the sale of CCA. Cranbrook testified that the parties reached a verbal understanding of the terms on which they would strike the deal.

The defendants, on the other hand, claimed that Cranbrook's consent was never required for the sale of Banyan Bay. They have argued that the negotiations for the partnership interest in Banyan Bay were independent of the defendants' sale of CCA.

On April 22, 1996, Cranbrook's President, John Heikenfeld, sent a letter to Aubrey Lane of the defendants. The letter stated that "[w]e approve the sale of Cranbrook Apartments under the following conditions." It then recited two paragraphs of economic details regarding the transaction. At the end, it stated:

3

> [i]f Mr. Joseph can confirm this condition in writing and provide the documents that complete this transaction such as the Limited Partnership Agreement on Banyan Bay, then we are prepared to go forward.

Edwin Joseph, the defendants' president, signed the letter, indicating that he had "READ, AGREED AND ACCEPTED" it, and returned the letter to Cranbrook.

According to Cranbrook, the phrase "we are prepared to go forward" indicated that Cranbrook would execute and deliver a consent form agreeing to the sale of CCA, which defendants needed to close the sale. According to the defendants, the same phrase meant that the parties would continue to the next stage of negotiations on the Banyan Bay deal.

Upon receiving the signed letter, Cranbrook executed and delivered a consent form to the defendants, which the defendants used to close the CCA sale. The defendants, however, refused to honor the terms of the letter agreement concerning Banyan, contending that no contract had ever been formed concerning the Banyan Bay transaction.

Cranbrook has contended in this appeal that the district court erred in granting summary judgment to the defendants. A district court's grant of summary judgment is reviewed de novo . See, e.g., Sempione v. Provident Bank of Maryland, 75 F.3d 951, 954 (4th Cir. 1996). We view all disputed facts in the light most favorable to the non-moving party, Cranbrook. See Anderson v. Liberty Lobby , 477 U.S. 242, 255 (1986).

The district court held that no contract was created, in part because Cranbrook had made no showing that a meeting of the minds occurred. In particular, the letter agreement specified that a partnership agreement for Banyan Bay was to be drawn up, but that was never done. In response, Cranbrook has argued that the parties understood that the partnership agreement was to be modeled "pro forma" after the existing partnership agreement for CCA. Thus, Cranbrook has contended, the minds had met as to all material terms of the transaction.

4

For a contract to exist, the parties' must have a meeting of the minds; the parties therefore must agree on all material terms. See Smith v. Farrell, 199 Va. 121, 127-28, 98 S.E.2d 3, 7 (1957). A meeting of the minds requires a manifestation of mutual assent. See Wells v. Weston, 229 Va. 72, 78, 326 S.E.2d 672, 676 (1985).

The parties need not explicitly discuss all material terms, however. An agreement on certain terms may be implied by the court based upon usage of trade or course of dealing. See generally Corbin on Contracts § 568 (1960). When the parties agree upon the "general scope and stipulations" of a contract, the court will not void the contract for incompleteness. Coastland Corp. v. Third Nat. Mortgage Co., 611 F.2d 969, 976 (4th Cir. 1979). Rather, the court will imply any indefinite terms. See id.

Cranbrook has not contested that the contents of the partnership agreement were material. The issue, according to it, therefore, is simply whether the parties "manifested mutual assent," either explicitly or implicitly, to the contents of the partnership agreement.

The parties agree that the contents of the partnership agreement were not discussed during the negotiations that culminated in the letter agreement of April 22, 1996. Both sides attach meaning to this silence. The defendants have claimed that the parties' silence manifested a lack of agreement on the issue. To the contrary, Cranbrook has taken the position that, through silence, the parties manifested their satisfaction with the existing partnership agreement for CCA, and jointly they expected that it would be adopted pro forma for Banyan Bay.

Cranbrook has sought to establish a course of dealing based on only one prior "dealing" between the parties: the CCA.* Cranbrook has argued, however, that rather than constituting merely a single "dealing," the CCA constituted a series of ongoing dealings between the parties. In other words, the course of dealing was the everyday relationship between the parties that the partnership agreement had

_____

*The parties were partners in another venture before CCA, but neither party discusses the terms of that partnership agreement or its implication on "course of dealing."

5

established. Neither party had ever expressed any dissatisfaction with that relationship. Therefore, Cranbrook argued, both parties assumed that the relationship between the parties, as established by the terms of the CCA, would continue.

There is a material question of fact for a jury to decide. The presentation of evidence at trial would help illuminate such disputed issues as whether partnership agreements of this type are normally individualized or standardized; whether the CCA could have been uniformly adapted to Banyan Bay; and, ultimately, whether the parties had in fact implicitly agreed to adapting the CCA for Banyan Bay. If the jury decides that the parties implicitly agreed through their course of dealing to use the CCA partnership form for the Banyan Bay partnership, then a "meeting of the minds" did indeed occur, for parties may agree on contract terms without discussing them explicitly. Coastland, 611 F.2d at 976; Corbin on Contracts § 568. Therefore, the district court erred in ruling that, as a matter of law, there was no "meeting of the minds."

The district court also held that no contract was created because Cranbrook did not intend to be bound by the letter agreement. The court based its decision primarily on the language in the letter agreement, which it felt created no present commitment.

The question of whether a future writing is required to create a binding commitment is one of intent. If the parties intend to be bound and fully agree, then the preparation of a formal written instrument is merely a formality, and the stated intention to prepare such a formality will not prevent a reviewing court from finding an enforceable contract. See, e.g., Snyder-Falkinham v. Stockburger, 249 Va. 376, 385, 457 S.E.2d 36, 41 (1995). In other words, the key is whether the parties intend to be bound absent a future writing. See Boisseau v. Fuller, 96 Va. 45, 46-47, 30 S.E. 457, 457 (1898). A party's internal, subjective intent is irrelevant; the key is the party's manifestation of intent. See Lucy v. Zehmer, 196 Va. 493, 502, 84 S.E.2d 516, 521 (1954). The question is normally one for the trier of fact, as expressed by the Fourth Circuit:

> While there may of course be situations in which the manifestations of intention of both parties to be bound, or of

6

either not to be bound, are so unequivocal as to present no genuine issue of fact, this will but rarely be so in protracted negotiations involving a "jumble of letters, telegrams, acts, and spoken words." Restatement (Second) of Contracts, § 21A, Comment a. Ordinarily in such cases, the issue whether there has at any time been the requisite manifestation of mutual assent to a bargained exchange will be one of fact in genuine dispute so as to preclude summary judgment.

Charbonnages de France v. Smith, 597 F.2d 406, 415 (4th Cir. 1979).

In the instant case, the language of the letter agreement is critical. John Heikenfeld, Cranbrook's president, wrote "[w]e approve the sale of Cranbrook Apartments under the following conditions." He then recited two paragraphs of economic details regarding the transaction. At the end, he wrote

> [i]f Mr. Joseph can confirm this condition in writing and provide the documents that complete this transaction such as the Limited Partnership Agreement on Banyan Bay, then we are prepared to go forward.

Edwin Joseph, the defendants' president, signed the letter, indicating that he had "READ, AGREED AND ACCEPTED" it, and returned the letter to Cranbrook.

The district court focused on the phrase "and provide the documents that complete this transaction such as the Limited Partnership Agreement on Banyan Bay, then we are prepared to go forward," concluding that the language was "not ambiguous" in expressing that Cranbrook did not intend to be bound until additional writings were created. The court looked to the following passage from John Heikenfeld's deposition:

> Q: It is correct, is it not, Mr. Heikenfeld, on behalf of Cranbrook Investors you were not prepared to make this investment in Banyan Bay without a limited partnership agreement?

7

A: Among other things, yes.

Q: By among other things you mean other documents typical for an investment of this magnitude in a real estate deal?

A: Correct.

It is possible, however, to read the letter agreement as manifesting Cranbrook's intent to be bound immediately. First, in his affidavit, Heikenfeld explained that the phrase "then we are prepared to go forward" referred to sending the defendants the consent form. Although a party's subjective intent is irrelevant, it appears from a purely objective standpoint that the phrase is indeed susceptible to such an interpretation. The interpretation is also consistent with the parties' course of dealing. According to Cranbrook, they had negotiated over Cranbrook's consent to the CCA sale for many months. Cranbrook had withheld its consent, up until the negotiations over Banyan Bay that culminated in the letter agreement. Under these circumstances, it is disputable whether the phrase "then we are prepared to go forward" indicated that Cranbrook would "go forward" with submitting the consent form to the defendants.

Second, a different interpretation is possible for the phrase "and provide the documents that complete this transaction such as the limited partnership agreement for Banyan Bay." If, as Cranbrook has claimed, the parties expected to use the same basic partnership agreement for Banyan Bay as for CCA, then Cranbrook was manifesting an intent to adopt the CCA partnership agreement pro forma, without future negotiations. Moreover, when the defendants' president signed the letter agreement indicating that he had "READ, AGREED AND ACCEPTED" the terms of the letter, he was manifesting his own intent to adopt that partnership agreement without further negotiation. Under such an interpretation, a contract would be formed.

Finally, Heikenfeld's deposition statements are consistent with this reading. If the partnership agreement and other documents were mere formalities, Heikenfeld's admission that they were required would not defeat Cranbrook's claim of being immediately bound.

8

This is not one of those rare cases where summary judgment is appropriate on the issue of whether the parties intended to be immediately bound. See Charbonnages, 597 F.2d at 415. The parties dispute whether they had implicitly agreed that the limited partnership agreement from Cranbrook Club was to be adapted pro forma to fit Banyan Bay. The resolution of that issue of fact directly bears on whether the letter agreement constituted a manifestation of intent to be immediately bound.

A material issue of fact exists as to whether the parties intended to be immediately bound. Thus, the district court should not have granted summary judgment at this stage. The case is therefore reversed and remanded for proceedings in accordance with this opinion.

REVERSED AND REMANDED

9