PRESENT: Carrico, C.J., Hassell, Keenan, Koontz, Kinser, and
Lemons, JJ., and Compton, S.J.

SUSAN FREIER CAINE, ET AL.                    OPINION BY
                                   SENIOR JUSTICE A. CHRISTIAN COMPTON
v.  Record No. 011961                    June 7, 2002

AMY K. FREIER

                  FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                          Leslie M. Alden, Judge

     In this appeal of a final decree entered in a suit for aid

and guidance brought by the personal representative of a

decedent's estate, the issues emphasized by the appellants

involve the chancellor's refusal to rule that the widow had

waived statutory rights and refusal to impose sanctions upon

her.

     Dr. Andrew A. Freier, a resident of Fairfax County, died

testate on January 27, 1998 at age 74.  In August 2000,

appellant Bank of America, N.A., (formerly NationsBank,

successor to Sovran Bank) filed a "Bill of Complaint for Aid and

Direction."  The Bank was named personal representative of Dr.

Freier's last will dated December 19, 1990, which is under the

administration of the court below.

     Defendants in the bill of complaint were appellant Susan

Freier Caine, an adult, the testator's only daughter and a named

beneficiary under the will; appellant Jonathan M. Freier, an

adult, the testator's only son and a named beneficiary under the

will; and appellee Amy K. Freier, the surviving wife of the

testator.  She had married the testator in September of 1994. His children were from an earlier marriage.

The widow made an election against the will pursuant to the omitted spouse statute, Code § 64.1-69.1 (when testator fails to provide by will for surviving spouse who married testator after execution of will, omitted spouse shall receive same share of estate that spouse would have received if decedent left no will, unless it appears from will or a marital agreement that omission was intentional).

Central to this controversy is the question whether a proposed marital agreement executed only by Amy Freier should be given effect in the distribution of the estate.

There are very few conflicts in the relevant facts.  The testator conducted an active medical practice for many years prior to his retirement in 1996.  In November and December of 1997, he was hospitalized due to medical problems associated with congestive heart failure.  Following the hospitalization, discussions took place among the testator, his wife, and their separate attorneys.  These discussions were designed to effectuate a change to the testator's estate plan.  Under the provisions of the 1990 will, the testator's entire estate was left to his two children.

A portion of the estate consisted of three Individual Retirement Accounts (IRAs), two of which named the children as

beneficiaries; the third named the testator's estate as beneficiary.

The first change to his existing estate plan was accomplished on January 21, 1998, when the testator executed the proper documentation to make his wife the sole beneficiary of the three IRAs. On January 22, 1998, a draft marital agreement was prepared by the testator's attorney to implement additional changes to the estate plan. The wife's attorney added an additional provision to the draft and a final copy of the agreement was prepared by the testator's attorney.

On January 24, 1998, the agreement was brought to the Freier home and the wife executed it. On that day, the testator's attorney planned to present the agreement and a newly prepared will to Dr. Freier for his signature. However, the testator was unable to communicate with his attorney due to his failing health. When he died on January 27, 1998, he had not signed the marital agreement or the new will.

In September 1998, the Freier children filed a suit in the court below seeking to void the designation of the widow as beneficiary of the IRAs. They alleged forgery of the signatures of the IRA beneficiary forms, lack of capacity of the decedent to execute the forms, and fraud and undue influence by the widow.

Prior to the June 1999 trial in the IRA litigation, presided over by the same judge who presided in the present suit, the children learned that the widow had executed the marital agreement prior to the decedent's death.  The Bank, although not a party to the IRA litigation, also became aware prior to that trial of the execution of the agreement by the widow only.  However, the children did not pursue the issue of the agreement's enforceability during trial, even though the court raised it sua sponte.

The circuit court ruled against the children and in favor of the widow in the IRA suit.  The children's petition for appeal from that judgment was refused by this Court.  Caine v. Freier, Record No. 992581 (April 25, 2000).[*]

The August 2000 bill of complaint in the present suit filed by the Bank identified a number of issues, the determination of which, according to the Bank, would give aid and direction to assist in distribution of the assets remaining in the decedent's estate.  The first issue was whether the proposed marital agreement executed by the widow is fully or partially enforceable against the widow by the decedent's estate.  That issue was the subject of a demurrer and plea in bar filed by the widow.

---

[*] In Caine v. NationsBank, 262 Va. 312, 551 S.E.2d 653 (2001), we decided another case involving Dr. Freier's estate.

4

The proposed agreement provided, inter alia, that the widow accepted the jointly owned family home. The document stated she would not seek payment of any portion of the mortgage debt from the husband's estate and would be solely responsible for payment of that sum. After providing for disposition of certain personalty and for transfer of the IRAs, the document provided that the widow "waive[d] the right to take an elective share of [decedent's] estate as otherwise accorded her by the Virginia Code."

The draft will referred to the proposed agreement, made certain bequests to the widow, and gave the residue of the estate to the children in equal shares.

In the demurrer, the widow asserted the agreement was unenforceable as a matter of law. In the plea in bar, the widow asserted that the doctrine of res judicata also barred the Bank from prevailing on that issue because the issue could have been resolved in the IRA litigation decided in her favor.

Following argument of counsel, the trial court ruled that res judicata barred the litigation of the marital agreement's enforceability. Further, the trial court ruled that, even if res judicata did not apply, the proposed marital agreement is unenforceable as a matter of law.

Additionally, the chancellor ruled against the children's contention that the January 1998 oral discussions regarding the

5

decedent's overall general estate plan constituted an agreement enforceable in regard to his estate.  The court found that "a review of the facts here shows that Dr. and Mrs. Freier intended to take all steps necessary to formalize their discussions in writing."

Accordingly, the trial court, in a January 2001 order, sustained the demurrer and plea in bar.  In that order, the court required counsel to list all issues remaining to be addressed.

After consideration of further evidence and argument of counsel, the chancellor disposed of the remaining issues in a May 2001 bench ruling.  The court noted that the Bank argued that the widow, through her conduct and other actions, had waived her statutory rights or that she was estopped from asserting those rights.  The court said "the Personal Representative takes this position notwithstanding the previous ruling regarding the unenforceability of the contract." Referring to the omitted spouse statute, Code § 64.1-69.1, the court ruled "that in the absence of a valid marital contract or other valid testamentary evidence, . . . there is just no authority in Virginia law for this Court to find that one is disqualified or disentitled from taking statutory entitlements." In essence, the chancellor decided that because the proposed marital agreement was unenforceable, there could be no waiver of

6

the widow's statutory rights.  However, in an alternative ruling, the chancellor concluded that, "as a matter of fact . . . neither waiver nor estoppel have been proved."

Addressing the sanctions issue, the chancellor stated: "The Personal Representative has filed a motion for sanctions against Mrs. Freier and/or her attorneys for discovery-related conduct . . . that in large part took place in the prior litigation, litigation which was concluded years ago; has been up to the Supreme Court and is long over."  The chancellor noted that the conduct complained of was failure to timely produce the draft of the proposed agreement that contained the widow's signature.

The chancellor denied the sanctions claim, ruling that any problems with "the proper pursuit of discovery" in the IRA litigation "should have been resolved in that case."

The trial court also ruled that the personal representative had an obligation to contribute to the jointly owned purchase money mortgage indebtedness on the home of Dr. and Mrs. Freier, owned as tenants by the entireties with right of survivorship, and that the sum of $217,415.83 already paid by the personal representative as contribution was the correct sum.

Consequently, in a June 2001 final decree, the trial court memorialized the foregoing, and other, rulings on issues the Bank raised seeking aid and guidance.  We awarded this appeal

7

limited to consideration of five assignments of error set forth in the joint petition for appeal filed by the Bank and the children.

Initially, we rule upon a procedural issue raised by the widow. We agree with her contention that the Bank must be dismissed as a party appellant.

Code § 8.01-670(A) provides that "any person may present a petition for an appeal to the Supreme Court if he believes himself aggrieved . . . (3) By a final judgment in any . . . civil case."

In the present case, the personal representative is not aggrieved by the decree from which it seeks an appeal. In the bill of complaint, the Bank merely asked for the aid and guidance of the lower court in administering the decedent's estate, and the decree complained of gave it that relief.

The chancellor's rulings in no way adversely affected the estate represented by the Bank. We reject the Bank's contention that it has some "institutional" interest in administration of decedents' estates, thereby causing it to be adversely affected by the chancellor's rulings. The Freier children are the persons adversely affected. The personal representative "has no right, at the expense of the estate, to seek [rulings] favorable to these legatees." Shocket v. Silberman, 209 Va. 490, 492, 165 S.E.2d 414, 417 (1969).

8

However, the absence of the Bank as a party appellant does not prevent us from considering the appellate issues, argument of which is set forth in appellate briefs filed jointly by the children and the Bank.

The analysis begins with the observation that the children have not assigned error to the trial court's rulings sustaining the widow's plea in bar on res judicata grounds; nor have they assigned error to that portion of the chancellor's ruling sustaining the demurrer regarding the unenforceability of the proposed marital agreement. Therefore, we shall disregard the children's effort to resurrect the enforceability issue in this appeal. See Rule 5:17(c).

Because the unenforceability of the proposed marital agreement has been finally decided in this case, the children's appeal falls apart. The invalidity of the agreement takes the issue of waiver and estoppel out of the case because the alleged validity of the agreement formed the principal basis of the waiver and estoppel argument. Therefore, little remains to be discussed, given the assignments of error to which the appeal has been limited.

The only issues that have any possible viability are (1) whether the trial court erred in refusing to find there was an "enforceable oral agreement" (as distinguished from the proposed formal written agreement) for the testator's general estate plan

9

between Dr. and Mrs. Freier that was binding upon Mrs. Freier; (2) whether the trial court erred in deciding that the widow "was entitled to have the Estate, by right of contribution, pay part of the outstanding balance on the joint debt of Dr. and Mrs. Freier for a purchase money deed of trust loan to acquire their marital home as tenants by the entirety, and in ruling that the Estate had paid the correct amount"; and (3) whether the trial court erred in deciding that the widow, as an "asserted beneficiary and creditor" of the decedent's estate, and her attorney, "had no obligation to disclose to the Personal Representative or to the court that she had signed the Marital Agreement, and then erred in refusing to impose sanctions against them for that failure to disclose and for other misrepresentations in their pleadings."

There is no merit to the contention that the trial court erred in ruling there was no enforceable general oral agreement regarding the decedent's estate distribution plans. For purposes of this discussion, we will assume but not decide that Virginia law permits an oral, unwritten, enforceable estate distribution plan. But see Code § 64.1-49 (will not valid unless in writing and signed by testator); Code §§ 20-155 and - 149 (marital agreements shall be in writing). We do not need to address that question of law, because here there is no credible

testimony that Dr. and Mrs. Freier had a definite oral agreement for the distribution of his estate.

Indeed, there was evidence to support the chancellor's finding that the Freiers contemplated a formal written agreement regarding the distribution.  For example, Dr. Freier's attorney confirmed in testimony that, from the first meeting about estate planning held in December 1997, the parties "were working towards a written formal agreement . . . that would provide for her in accordance with his estate distribution."  The evidence established that the terms of the proposed written agreement were being modified up until the date of the testator's death.

This issue is not controlled by cases relied upon by the children in which the Court has approved enforcement of oral agreements. For example, in Snyder-Falkinham v. Stockburger, 249 Va. 376, 457 S.E.2d 36 (1995), we gave effect to an oral agreement to settle a lawsuit even though the parties had contemplated a formal written settlement agreement.  In that case, however, unlike the present case, there was no dispute that all parties and counsel had agreed to all aspects of the settlement, when one party rejected the deal before a formal agreement was drafted but after the case had been dismissed with prejudice.

Next, we reject the children's contention that the trial court erred in deciding that the estate properly paid, by right

11

of contribution, a part of the purchase money mortgage indebtedness on the marital home owned as tenants by the entireties with right of survivorship, and that the amount paid of approximately $217,400 was correct.

In 1995, the Freiers, as husband and wife, purchased a home for their primary residence; it was titled and held as tenants by the entireties. A portion of the purchase price was paid in cash, and a purchase money deed of trust was obtained for the balance. Both husband and wife were jointly and severally liable for the obligation. When Dr. Freier died, full ownership of the home passed to the widow by operation of law because of her status as the surviving tenant by the entireties.

The widow continued to occupy the home until she sold it in March 1999. At closing, there remained a balance of about $434,000 on the indebtedness. At the widow's request, the personal representative made the foregoing payment, which represented one-half of the indebtedness, to the mortgage company at closing. The children now dispute the payment, contending the personal representative was not required to make it, and that the incorrect amount was paid. We disagree.

Virginia follows "the common-law rule that in the absence of a contrary testamentary direction, the personal estate of a decedent is the primary fund for the payment of his debts, even though they may be secured by [a] deed of trust given by the

12

decedent in his lifetime on real [e]state." Brown v. Hargraves, 198 Va. 748, 750, 96 S.E.2d 788, 790 (1957). This is true even if "the entire estate is vested in the surviving joint tenant, and the estate of the deceased takes nothing in the property." Id.

When, as here, each of the joint tenants became personally liable, jointly and severally, to the noteholder for the full amount of the note, "each was entitled to the right of contribution, an equity which arises when one of several parties liable on a common debt discharges the obligation for the benefit of all." Id. at 751, 96 S.E.2d at 791.

Therefore, because Dr. Freier's estate is liable for his debts, and the proceeds of his personal estate are primarily liable for paying them, Mrs. Freier is entitled, under the right of contribution, to have his personal estate charged with liability for one-half of the joint indebtedness evidenced by the note in question. See id. at 752, 96 S.E.2d at 791-92. Accord Pickett v. Spain, 254 Va. 107, 110, 487 S.E.2d 233, 235 (1997). See also Code § 8.01-11(B) (personal representative charged with joint obligations of decedent).

And, the personal representative is liable for one-half of the indebtedness that is due at the time contribution is sought. Brown, 198 Va. at 752, 96 S.E.2d at 792. Thus, the trial court

correctly decided that the personal representative paid the correct amount in contribution.

Finally, we do not agree with the children's contention that the trial court abused its discretion by refusing to impose sanctions in this case upon the widow and her attorneys due to alleged failure in the IRA litigation promptly to disclose the existence of the proposed marital agreement signed by the widow. The children argue that the widow and her attorneys had an affirmative duty of disclosure, which they violated.

As the trial court correctly ruled, there was no basis in the present case for sanctions regarding discovery in prior, concluded litigation, even assuming a duty of disclosure somehow existed and the duty was violated.

Consequently, we will dismiss the personal representative as a party appellant and, finding no error in the judgment below, it will be

<u>Affirmed</u>.