PRESENT:  All the Justices

GERALD T. DIXON, JR., L.L.C.

v.   Record No. 110187

HASSELL & FOLKES, P.C.

OPINION BY
JUSTICE WILLIAM C. MIMS
March 2, 2012

FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Randall D. Smith, Judge

In this appeal, we consider whether an agreement was in
writing for the purposes of the statute of limitations set
forth in Code § 8.01-246.

I.   BACKGROUND AND MATERIAL PROCEEDINGS BELOW

In March 2003, Gerald T. Dixon, Jr., L.L.C. ("Dixon")
retained Hassell & Folkes, P.C. ("Hassell") to survey and mark
the boundary lines of a parcel Dixon owned in the City of
Chesapeake.  After completion of the survey, Dixon constructed
a concrete slab foundation on the parcel.  In March 2006, Dixon
conveyed the parcel by general warranty deed to Brat
Development, L.L.C. ("Brat"), which began construction of an
office building on the foundation slab.

Soon thereafter, A & G Partnership t/a Chesapeake Pizza
("A&G") commenced an action for injunctive relief alleging that
Brat's office building encroached upon its adjoining parcel.
In January 2008, the circuit court entered final judgment
finding that Brat's office building encroached on A&G's parcel,

ordered its removal, and permanently enjoined Brat from entering upon A&G's parcel.

In July 2008, Brat filed a complaint against Dixon alleging constructive fraud and breach of warranty deed pursuant to the deed from Dixon to Brat. In August 2009, Dixon filed a complaint against Hassell alleging breach of contract due to Hassell's erroneous determination of the parcel's boundary lines.[*] Dixon subsequently filed a supplemental bill of particulars in which it represented that a written contract existed between it and Hassell.

The document attached and referred to in the supplemental bill of particulars is a letter addressed to Dixon signed by S. Grey Folkes, Jr., in his capacity as president of Hassell ("the Writing"). The Writing began by stating, "[p]ursuant to your request, we are pleased to submit this proposal . . . . If you find the following terms acceptable, an executed copy will serve as our agreement." Similarly, the Writing concluded by stating, "[s]hould you find this proposal acceptable, please sign both copies of this proposal in the space provided below and return a fully executed copy to us. Receipt of the

---

[*] Dixon also filed a third-party complaint against Hassell in the ongoing litigation with Brat, and the two proceedings were consolidated by agreement of the parties. Hassell filed a demurrer to the third-party complaint, which the circuit court sustained. The court then dismissed Dixon's third-party complaint with prejudice. The demurrer to and dismissal of the third-party complaint are not presently before us.

2

executed copy will serve as the written agreement . . . ." While Dixon conceded it had never signed the Writing, Dixon asserted that it was a written contract which had been fully performed by both parties.

Hassell filed a plea in bar of the statute of limitations to Dixon's complaint for breach of contract. Hassell asserted that the Writing was merely an unexecuted proposal to enter into a written contract but that no written contract had been formed. Accordingly, Hassell argued, the only contract between the parties was an oral agreement consistent with the terms of the Writing. Because there was no written contract, Hassell asserted that Code § 8.01-246(4) required Dixon to file its complaint within three years. While all work under the contract was complete in March 2006, Dixon failed to file its breach of contract complaint until August 2009; therefore Hassell concluded that Dixon's cause of action was barred by the statute of limitations. After a hearing, the circuit court granted Hassell's plea in bar and dismissed Dixon's complaint with prejudice. We awarded Dixon this appeal.

## II. ANALYSIS

Code § 8.01-246(2) provides that "actions on any contract which is not otherwise specified and which is in writing and signed by the party to be charged thereby" shall be brought "within five years whether such writing be under seal or not."

3

By contrast, Code § 8.01-246(4) provides that "actions upon any unwritten contract, express or implied," shall be brought "within three years."  The sole issue in this appeal is whether the Writing is a "contract . . . in writing" within the meaning of Code § 8.01-246(2).  "There are no facts in dispute, so the applicability of the statute of limitations is a purely legal question of statutory construction which we review de novo." Conger v. Barrett, 280 Va. 627, 630, 702 S.E.2d 117, 118 (2010).

Dixon argues that its failure to sign and return the Writing was a mere formality that did not prevent the formation of a contract.  We agree.  However, the issue in this case is not whether a contract existed between the parties but whether the contract was "in writing" for the purposes of the five-year statute of limitations.  We hold that it was not.

Dixon principally relies on our decisions in Snyder-Falkinham v. Stockburger, 249 Va. 376, 457 S.E.2d 36 (1995), and Golding v. Floyd, 261 Va. 190, 539 S.E2d 735 (2001).  In Snyder-Falkinham, we held that a settlement agreement orally agreed to by the parties was binding even though it contemplated the execution of a formal writing memorializing its terms and one of the parties subsequently refused to execute the written document.  249 Va. at 385, 457 S.E.2d at 41.  Conversely, in Golding, we held that a settlement

4

agreement was unenforceable when a memorandum setting forth the terms of the agreement expressly provided that it was "subject to execution of a formal agreement consistent with the terms" of the memorandum and no such formal agreement was executed. 261 Va. at 192, 194, 539 S.E.2d at 736-38 (emphasis omitted). Dixon also cites Galloway Corp. v. S. B. Ballard Construction Co., 250 Va. 493, 464 S.E.2d 349 (1995), in which we noted that the absence of a party's signature did not undermine the existence of a contract which had been accepted by performance. Id. at 505, 464 S.E.2d at 356.

In each of these cases, the question was whether the parties had formed an enforceable contract at all, not whether the contract was written or unwritten for the purposes of the statute of limitations. But Hassell does not dispute that a contract existed in this case; it disputes only which statute of limitations applies. Accordingly, these precedents are not relevant to our inquiry in this case. This is equally true for each of the additional cases Dixon cites from federal courts and the courts of other states, with one exception.

In Simmons & Simmons Construction Co. v. Rea, 286 S.W.2d 415 (Tex. 1995), the Supreme Court of Texas stated that "[a]n unsigned agreement all the terms of which are embodied in a writing, unconditionally assented to by both parties, is a written contract." Id. at 418 (quoting 1 Corbin on Contracts

5

§§ 31 and 32) (emphasis in Simmons).  But that is not all the court said in that case.  It also said that "the making of a valid contract requires no writing whatever; and even if there is a writing, there need be no signatures unless the parties have made them necessary at the time they express their assent."  Id. (quoting 1 Corbin on Contracts §§ 31 and 32) (emphasis added).

In this case, Hassell specifically required Dixon to "sign both copies of this proposal . . . and return a fully executed copy to us."  Moreover, Hassell conditioned the existence of a written contract upon its receipt of an executed copy of the Writing in two separate places:  at the beginning, where the Writing stated that "an executed copy will serve as our agreement," and at the end, where it stated that "the executed copy will serve as the written agreement."

The fact that the Writing states the signature requirement twice underscores its importance to Hassell and clearly evidences Hassell's intent that the Writing would not become a written contract without Dixon's signature.  Dixon's failure to sign and return the Writing as its terms required did not preclude the parties from forming a binding contract.  But Dixon's failure to sign and return the Writing did preclude the Writing itself from becoming a written contract as contemplated by Code § 8.01-246(2).

6

Dixon also argues that by its plain language, Code § 8.01-246(2) requires only three elements for the five-year statute of limitations to apply: (1) that the contract specify no alternative statute of limitations, (2) that the contract be in writing, and (3) that it be signed by the party charged with breach. Dixon contends that because the third element requires that a contract be signed only by the party charged with breach, the statute does not require every party to sign the contract. Based on the clear and specific terms set forth in the Writing in this specific case, we disagree.

It is well-settled that the parties may contract as they choose so long as the terms they adopt are not prohibited by statute or public policy. Barber v. VistaRMS, Inc., 272 Va. 319, 329, 634 S.E.2d 706, 712 (2006). No such prohibition barred Hassell from requiring Dixon to sign and return the Writing as a condition precedent to its becoming a written contract. By failing to sign and return the Writing, Dixon rejected that term of the agreement Hassell proposed.

Because the Writing expressly required Dixon's signature as a condition precedent to becoming a written contract and Dixon failed to sign it, there was no written contract. Accordingly, Dixon's cause of action was subject to the three-year statute of limitations set forth in Code § 8.01-246(4) and

7

was time-barred when Dixon filed its complaint in August 2009. Accordingly, we will affirm the judgment of the circuit court.

Affirmed.

JUSTICE McCLANAHAN, dissenting.

As Professor Corbin explains, "[a] memorandum of agreement, signed by one party and acted on by both is a binding written contract." Joseph M. Perillo, 1 Corbin on Contracts § 2.10, at 168-70 (Joseph M. Perillo, ed., rev. ed. 1993) (emphasis added). Dixon has alleged facts to that effect in its breach of contract action against Hassell, which action is now before us for review on Dixon's pleadings. The writing alleged by Dixon to be the written contract between the parties (the "Writing") shows that it was executed by Hassell. The Writing was thus signed "by the party to be charged" in this case. Code § 8.01-246 (setting forth elements of statute of limitations for written contracts). Furthermore, Dixon has alleged that Hassell was performing services pursuant to the Writing that constituted the alleged breach of contract within five years of the filing of this action. As such, the Writing, I believe, renders this action on a written contract timely filed under the Code § 8.01-246(2) five-year statute of limitations.

8

Therefore, contrary to the majority, I would reverse the judgment of the trial court in granting Hassell's demurrer and plea in bar on the grounds that Dixon's action was barred under the Code § 8.01-246(4) three-year statute of limitations for oral contracts.  Both the trial court's judgment and the majority opinion are based on what I believe to be an incorrect determination that Dixon merely presented allegations of a breach of an oral contract.

Hassell presented no evidence in support of its plea in bar.  Thus, when "deciding both the plea in bar and [Hassell's] demurrer, we, like the trial court, must confine our consideration to the allegations" contained in Dixon's complaint, as supplemented by its bill of particulars.  Bell Atlantic-Virginia, Inc. v. Arlington Cnty., 254 Va. 60, 63, 486 S.E.2d 297, 298-99 (1997).  And, in doing so, we are required under familiar principles to view "as true all material facts well pleaded, facts impliedly alleged, and facts that may be fairly inferred from those alleged."  Id. at 63, 486 S.E.2d at 299 (citations omitted).

Viewed in that light, Hassell sent the Writing, signed by Hassell's president, to Dixon.  The Writing included Hassell's detailed offer to perform engineering and surveying services for Dixon in the form of "preliminary and final site plans for [Dixon's] proposed office building" in Chesapeake.  The

9

Writing specified, inter alia, the individual services to be provided by Hassell in conjunction with the office building project, the various fees for each of the services (e.g., "[p]reliminary plan preparation . . . $1,500.00"; "[v]erification of existing boundary $1,500.00"; "[t]opographic survey $900.00"; "[s]ite development plans $7,500.00"), and additional available services that would require "changes in scope of work and compensation."

Despite the fact that Dixon did not sign and return the Writing to Hassell, as confirmation of the parties' agreement as Hassell requested, the parties proceeded with performance pursuant to the terms of the Writing.  Hassell provided to Dixon the services covered by the Writing, as well as additional services necessitating change orders, extending "as late as March 20, 2006," and Dixon paid Hassell for those services.[*]  As documentary evidence of the same (submitted with Dixon's bill of particulars), Hassell presented to Dixon, at least in certain instances, written invoices indicating completion of specific services, and requesting payment for those services, pursuant to the terms of the Writing.  Other invoices from Hassell to Dixon regarding the same project

---

[*]Dixon filed its third-party complaint in 2009, and therefore instituted its breach of contract action, on the facts alleged, within five years of the accrual of that action.

indicated in the heading that they were for "Services Beyond Contract Scope." Similarly, Hassell presented to Dixon in writing certain change orders during its work on the project, each identified as "Notice of Additional Services to Contract." In providing its services to Dixon, Hassell breached its contract with Dixon under the Writing by preparing an "incorrect" boundary line survey, thereby causing an encroachment to be constructed upon the adjoining landowner for which Dixon has incurred monetary damages.

In light of these allegations, Hassell's counsel was asked at oral argument where this Court was to find the terms of the purported oral contract between the parties. Hassell's counsel responded that the terms were "reflected" in the Writing. The majority, in fact, recognizes that Hassell contends the purported oral contract was "consistent with the terms of the Writing." This concession demonstrates why the threshold determination in support of the judgment in this case – that the contract between the parties was merely an oral contract – amounts to a legal fiction. The Writing is what the parties mutually assented to as evidenced by their performance pursuant to its terms. There are simply no facts, as alleged, before this Court indicating otherwise. Under basic contract law, "[a]ssent may be inferred from the acts and conduct of the parties." Durham v. National Pool Equip. Co. of Va., 205 Va.

11

441, 445, 138 S.E.2d 55, 58 (1964) (citations omitted); see Marefield Meadows, Inc. v. Lorenz, 245 Va. 255, 260, 427 S.E.2d 363, 365 (1993) ("A meeting of the minds is essential to the formation of a contract, but 'the law imputes to a person an intention corresponding to the reasonable meaning of his words and acts.' " (quoting Lucy v. Zehmer, 196 Va. 493, 503, 84 S.E.2d 516, 522 (1954))).  As "Justice Holmes once said: 'Conduct which imports acceptance is acceptance or assent, in the view of the law, whatever may have been the actual state of mind of the party.' "  NLRB v. Local 825, Int'l Union of Operating Eng'rs, 315 F.2d 695, 699 (3d Cir. 1963) (citation omitted).

The fact that only Hassell signed the Writing should not be seen, therefore, as dispositive of the issue of whether Hassell and Dixon were parties to a written contract, given their subsequent conduct showing that they assented to the Writing.  To be sure, Hassell could have required that Dixon sign the Writing before Hassell rendered its performance, and accepted Dixon's payment, under the terms of the Writing; but Hassell failed to do so, thereby waiving any such condition to consummation of the Writing.  Addressing analogous facts, the United States Court of Appeals for the Third Circuit in Local 825 explained: "That the Union failed to sign the [subject] agreement is immaterial[,] for any written contract though

12

signed only  by one of the parties binds the other if he accepts it and <u>both act in reliance on it as a valid contract</u>."  <u>Id.</u> (emphasis added).  See <u>Coffey v. Mann</u>, 585 N.W.2d 518, 524 (Neb. Ct. App. 1998) ("Because the parties unconditionally manifested their assent to the terms of the written contract, although they did not sign it, there was no fatal variance between the pleadings and the proof in this case.  A written contract was pled, and a written contract was proved."); <u>Leonard v. Bennett</u>, 674 S.W.2d 123, 127 (Mo. Ct. App. 1984) ("[T]hough a written contract be not signed by one or both of the parties, the acceptance by one of performance by the other validates the instrument, and imposes on the acceptor the corresponding obligation provided therein." (quoting <u>Sunbury v. Aaron</u>, 116 S.W. 431, 432 (Mo. Ct. App. 1909))); <u>Rush v. Atomic Electric Co.</u>, 384 So.2d 1067, 1068 (Ala. 1980) ("A party, by his actions and acceptance of the benefits of a contract and by operating under such agreement, may ratify and confirm a contract to which his actual signature is not affixed." (citation omitted)); <u>Whitters & Sons, Inc. v. Karr</u>, 180 N.W.2d 444, 446 (Iowa 1970) ("Where a written agreement signed by one party is accepted and adopted by the other, and acted upon, it becomes their contract in the same sense as though both parties had signed." (quoting <u>McDermott v. Mahoney</u>, 115 N.W. 32, 35 (Iowa 1908))).

For these reasons, I dissent.